# CASES DETERMINED

# January Term, 1904.

TILLY and others, Appellants, vs. MITCHELL & LEWIS COM-
PANY, Respondent.

*February 24—March 22, 1904.*

*Municipal corporations: Vacating streets: Validity of ordinance,
who may question: Persons peculiarly injured: Motives of coun-
cil not inquired into: Bridges over streets: Power of council.*

1. Where the .proposed vacation of a part of a street and occupa-
tion thereof by private individuals pursuant to city ordinances
will greatly depreciate the value of lots fronting on other
parts of said street, the threatened injury to the owners of
such lots is a special or peculiar one, differing in kind from
that to be suffered by the general public and entitling them to
sue on their own behalf to have such ordinances declared
void.
2. An ordinance within the power of the city council cannot be held
void on the ground that the council or its members acted from
improper motives, at least in the absence of corruption or
fraud.
3. Thus, an ordinance vacating portions of a street for the rea-
sons, stated therein, that such portions are of no public utility
and that the public interest requires such vacation, cannot be
successfully attacked on the ground that its sole purpose was
that the vacated portions might be devoted to private uses con-
trary to the public interest.
4. The ground upon which ordinances wholly unreasonable are
held void is that they are beyond the power of the council.
5. A city council has no power to grant to private individuals a.
right to construct a building or bridge over a public street to
connect the buildings on the sides thereof, although passage-
way for public travel be left beneath.

APPEAL from a judgment of the circuit court for Racine county: B. F. DUNWIDDIE, Judge. *Reversed.*

This is an action in equity brought to declare void two ordinances of the city of Racine, one of which attempts to vacate a portion of Eighth street in said city, and the other to permit the defendant corporation to make certain uses of a part of said Eighth street.

It appears by the complaint that Eighth street in the city of Racine is a street sixty feet in width and about three-quarters of a mile in length, running due east and west from Lake Michigan to Root river, and that it is much used by passengers on foot and in vehicles; that it is crossed by a number of streets running north and south, among which are Center street and Washington avenue, the latter being one block west of the former; that between the two last-named streets there existed originally a considerable depression in Eighth street, which has been filled in at great public expense, and that at this point Eighth street crosses the Chicago, Milwaukee & St. Paul Railway tracks upon a viaduct; that all the other east and west streets south of Eighth street for nearly a mile cross said railway tracks at grade, on which account the public are accustomed to use said Eighth street between Center street and Washington avenue to a great extent in order to avoid the danger of crossing said tracks at grade; that the defendant corporation owns the land on both sides of that part of Eighth street between Center street and Washington avenue, and operates a large manufactory north of and adjoining said portion of Eighth street; that the plaintiff *Fischer* owns and occupies as a homestead a lot on the northeast corner of Eighth and Center streets; that the plaintiff *Tilly* owns and occupies a lot on the southwest corner of Eighth and Racine streets, two blocks west of the vacated portion of Eighth street; that the plaintiff *Nelson* owns and uses for a residence and a drug store a lot and building at the corner of Eleventh street and Washington

avenue, being three blocks south of the vacated portion of Eighth street, and the plaintiffs *Owen* own and occupy certain lots on Racine street about two blocks west of the vacated portion of Eighth street; that the defendant corporation petitioned the council of the city of Racine for the vacation of that part of Eighth street between Center street and Washington avenue, and that in accordance with said petition, on the 5th day of January, 1903, the said common council passed an ordinance vacating the north twenty-five feet and the south fifteen feet of that part of Eighth street lying between Center street and Washington avenue, leaving a strip twenty feet in width unvacated, and that the sole object of the passage of said ordinance was to devote the vacated portion of said street to the private uses of the defendant, although the same were of great public utility and the public interest did not require such vacation; that by reason of the peculiar location of the property of the plaintiffs each of them will suffer peculiar injuries, in that the said real estate of each of said plaintiffs will be greatly depreciated in value by reason of such vacation and the means of access and egress will be interfered with; that the plaintiff *Nelson* will suffer great loss in the operation of his drug store by reason of the decrease of travel caused by such vacation, and that the plaintiffs have no adequate remedy at law; that the said common council by their action have devoted a public thoroughfare to purely private uses, and that their said action is irregular, illegal, and *ultra vires;* that the said ordinance was passed solely at the request of the defendant corporation and for its private benefit, and that the public interest did not require a vacation of said street, all of which the mayor and common council well knew; that the defendant corporation threatens to occupy the portion of said street so vacated with large factory buildings for their own private uses.

For a second cause of action the plaintiffs restate the gen-

eral allegations as to the character of Eighth street, the
ownership of lands, etc., as hereinbefore recited, and further
allege that in December, 1902, the defendant corporation
petitioned the common council in the city of Racine to allow
it to build over and across the twenty-foot strip of land in
Eighth street aforesaid, which was not vacated, such build-
ings, bridges, and passageways as their business might re-
quire, the same to be not less than fourteen feet above the
surface of the street, agreeing that in case such permission
was granted the said corporation would pave and keep in
good repair the said twenty-foot strip, as directed by the
council; that in accordance with such petition the council
passed the second ordinance granting said privileges to the
defendant corporation, and that said ordinance is null and
void because it attempts to grant a portion of the public
street and easement to private uses; that the defendant cor-
poration is about to use and occupy the privileges so at-
tempted to be granted, and to construct buildings over said
portion of Eighth street in accordance with the terms of said
ordinance; that both of said ordinances were the result of
a bargain and contract between the mayor and the council of
said city and the defendant corporation in reference to the
occupation by the defendant of said Eighth street for its
own private use. Here follow allegations of special injury
resulting to the plaintiffs' property from the passage of the
second ordinance similar to those before recited as resulting
from the first ordinance.

Judgment is demanded that both ordinances be declared
void and that the defendant corporation be restrained from
entering on said street or building buildings thereon.

The defendant demurred to this complaint, on the ground
that the plaintiffs had not legal capacity to sue, and the fur-
ther ground that the complaint did not state facts sufficient
to constitute a cause of action. This demurrer was sustained,

and, the plaintiffs not choosing to amend, judgment was rendered for the defendant, and the plaintiffs appeal.

For the appellants there was a brief by *Hand & Hand,* and oral argument by *E. B. Hand.*

For the respondent there was a brief by *Kearney, Thompson & Myers,* and oral argument by *T. M. Kearney* and *W. D. Thompson.*

WINSLOW, J.   This is an action in equity by property owners suing in their own right to declare void two ordinances passed by the common council on the ground that they unlawfully devote a public street to private use.

The first question raised by the demurrer is whether the plaintiffs, or any of them, show themselves entitled to maintain an action on their own behalf.   This court at an early day recognized the rule that in order to entitle a private person to maintain an action for damages resulting from the obstruction of a public way, or an action in equity to prevent such an obstruction, it must appear that the plaintiff has sustained damage differing not merely in degree, but in kind, from the damage sustained by the general public.   In other words, the plaintiff's injury must be of a different character from that sustained by the public in general.   *Walker v. Shepardson,* 2 Wis. 384.   This rule has been consistently followed, and is in accord with the law elsewhere.   *Clark v. C. & N. W. R. Co.* 70 Wis. 593, 36 N. W. 326; *Zettel v. West Bend,* 79 Wis. 316, 48 N. W. 379; *Baier v. Schermerhorn,* 96 Wis. 372, 71 N. W. 600.   This rule, like many others, is far easier of statement than of application.   Indeed, it seems hardly possible to lay down any rule which shall be so clearly stated and so universally applicable that the mere statement of it will solve the question of what constitutes this peculiar and different injury in a given case. It is very well settled that the mere fact that a property

owner is compelled to pursue a longer route in going to or coming from his real estate constitutes no peculiar or different injury. This is an injury which is shared by the general public, though not in the same degree. *Zettel v. West Bend, supra; Clark v. C. & N. W. R. Co., supra.* On the other hand, in *Walker v. Shepardson, supra,* the driving of piles in front of plaintiff's wharf, thus impairing the *value* and usefulness thereof, was held a special and peculiar injury. So, also, in *Barnes v. Racine,* 4 Wis. 454, the building of an unlawful bridge in a navigable river, which would impede navigation and interfere with the use of wharfs and docks owned by riparian proprietors, and *impair their value,* was held to be such an injury. So the unlawful closing of a street or public place, forming the *only* access to plaintiff's premises, is always held to be such an injury. *Williams v. Smith,* 22 Wis. 594. And it is not necessary that the street or place form the *only* access to the plaintiff's premises. If the plaintiff's lots adjoin the street or place to be closed, even though there be other access, and it is shown that the value of the lots will be greatly diminished and the risk from fire increased, and the lots otherwise injured, the required special and peculiar injury is shown. *Pettibone v. Hamilton,* 40 Wis. 402. Again, it has been frequently held that one who buys a lot in a plat whereon streets are marked has the right, as against his grantors, to have the streets on the plat which are appurtenant to his lot and contribute to its value forever kept open, and may enforce that right by private action. *Donohoo v. Murray,* 62 Wis. 100, 22 N. W. 167; *McFarland v. Lindekugel,* 107 Wis. 474, 83 N. W. 757. A learned review of the authorities then existing on this question is found in the case of *Stetson v. Faxon,* 19 Pick. 147, and is referred to with approval in *Enos v. Hamilton,* 27 Wis. 256. That was a case where a highway by prescription had been built upon by the defendant, and his building diverted travel from and obscured the plaintiff's

warehouse, making it less eligible as a place of business, and productive of less rent, but not cutting off access from other streets, and it was held that the plaintiff had suffered a special damage entitling him to sue alone. In discussing the two kinds of injuries, public and private, resulting from the obstruction of a highway, the court in that case well says:

"The people at large are supposed to be injured merely because they cannot pursue a particular track, which is an inconvenience felt by thousands, to be redressed by a prosecution in the name of the commonwealth. They suffer no actual particular injury to their trade or estates, and a prosecution on behalf of the public furnishes the appropriate remedy. But individuals *who in their persons or estates suffer great damage,* which may be proved to proceed and follow necessarily from the public nuisance, surely stand upon different ground, and each may have his action and recover for the particular damage according to the evidence."

The phrase used in the foregoing quotation, *"individuals who in their persons or estates suffer great damage,"* comes perhaps as near being a satisfactory expression of the principle as any that has been used. As before indicated, a person whose lot abuts upon the particular piece of street which is unlawfully closed or obstructed is universally held to be specially and peculiarly injured, though he may have other access to his lot; but many of the cases draw an arbitrary line at this point, and maintain that when the plaintiff's lot fronts upon another part of the street no such injury is shown. Certainly the distinction is illogical. The man whose lot fronts upon the next block may be fully as deeply injured in the decreased value, rentability, and desirability of his lot as the man whose lot fronts on the block which is closed. One may suffer as great damage in his estate as the other. True, there may be many such individual owners, but that cannot affect individual rights. There may be twenty or there may be fifty of them, but if each has suffered great damage to his estate by the unlawful closing of

a street, why shall not each have his action? Neither twenty men nor fifty men constitute the general public. The general public is composed of the great mass of individuals who own no property in the vicinity and who may wish to pass over the street or not, and who, if they do, simply suffer the trifling inconvenience of being obliged to make a circuitous trip. The man who owns a lot in the next block, and whose lot has lost a great part of its value by reason of the closing of the street, manifestly suffers some injury different in its nature from the mere inconvenience suffered by the general public. There are at least two plaintiffs in the present case who own lots fronting on Eighth street—one in the next block to the east, and the other two blocks to the west of the block attempted to be vacated. The complaint alleges distinctly that the property of each will be greatly depreciated in value by the proposed vacation and occupation of the street. We hold this to be a sufficient allegation of special or peculiar injury to entitle them to maintain an action of this kind, and we do not find it necessary to go further or critically examine the rights of the remaining plaintiffs. This conclusion is believed to be in strict harmony with and analogous to the principle adopted in the line of cases holding that where by an unlawful, though temporary, obstruction in a navigable river a manufacturer is deprived of access to his mill and his business damaged thereby, or an improvement company loses tolls, or a logger is put to additional expense in handling his logs, there is in each case a peculiar injury different from that suffered by the general public who might wish to navigate the river, which will sustain a private action. *Enos v. Hamilton,* 27 Wis. 256; *Wis. River Imp. Co. v. Lyons,* 30 Wis. 61; *Gates v. N. P. R. Co.* 64 Wis. 64, 24 N. W. 494. In each case the special and peculiar injury is simply a direct and substantial loss in money, a damage to the person or estate of an individual traceable directly to the public nuisance, and not common

to the public in general, and so answering the requirements of the text laid down in *Stetson v. Faxon,* 19 Pick. 147.

Proceeding from this question to the merits of the controversy, we are to consider first the attack upon the ordinance which attempts to vacate all but a twenty-foot strip of Eighth street between Center street and Washington avenue. The charter of the city of Racine (sec. 54, ch. 40, Laws of 1891) gives the common council of the city power to vacate, in whole or in part, such streets or alleys in the city "as in their opinion the public interest may require to be vacated, or such as in their opinion are of no public utility." The section provides for notice of hearing prior to the adoption of the ordinance, and also for the assessment of benefits and damages on request of any party interested.

The ordinance of vacation in the present case declares that the north twenty-five feet in width and the south fifteen feet in width of that part of Eighth street between Center street and Washington avenue is vacated "for the reason that such portions of said street are of no public utility and for the reason that the public interest requires such vacation." Although it is alleged in the complaint that the ordinance is void, and that the proceedings resulting in its passage were illegal, irregular, and *ultra vires,* there is no specific charge of any irregularity or illegality in its passage, nor was it claimed upon the argument that there was any such irregularity or illegality in procedure. The claim is and was that the ordinance of vacation was passed solely for the private benefit of the defendant corporation, and that the public good in no way demanded it, and hence that it was illegal and void. So the question really is whether in this action the validity of the ordinance can be challenged on the ground that the council acted from a wrong motive. Corruption is not claimed, fraud is not claimed, want of power is not claimed, but the simple claim is that the members of the council in exercising their legislative powers acted from im-

proper motives and subordinated the public interest to the private interests of the defendant corporation.

The general principle that legislative acts within the power of the legislative body to pass are not subject to revision or control by the courts on the ground of inexpediency, injustice, or impropriety is well settled, and has nowhere been stated with greater vigor than by this court. Thus, in *Brodhead v. Milwaukee,* 19 Wis. 624, it was said:

"This court can, and when properly presented must, deal with and determine questions of the power of the legislature under the constitution; but it cannot lay its hand upon or interdict a statute, or arrest its operation, because such statute is either unwise, unjust, or oppressive, there being no question of legislative power involved."

The supreme court of the United States in *Angle v. C., St. P., M. & O. R. Co.* 151 U. S. 1, 14 Sup. Ct. 240, thus enunciates the doctrine:

"The rule, briefly stated, is that whenever an act of the legislature is challenged in court the inquiry is *limited to the question of power,* and does not extend to the matter of expediency, the motive of the legislators, or the reasons which are spread before them to induce the passage of the act. This rule rests upon the independence of the legislature as one of the co-ordinate departments of the government. It would not be seemly for either of the three departments to be instituting an inquiry as to whether another acted wisely, intelligently, or corruptly."

In both of the cases quoted from, acts of the legislature were under consideration, but the same general principle has been frequently recognized as applicable to the acts of the common council which are legislative in their character, as is the ordinance under consideration. *State ex rel. Rose v. Superior Court,* 105 Wis. 651, 81 N. W. 1046; *Lange v. La Crosse & E. R. Co.* 118 Wis. 558, 95 N. W. 952. It is true that certain apparent exceptions to the rule are recognized, as, for instance, where an ordinance is entirely unreasonable.

This, however, can hardly be properly called an exception, because it is in fact a case simply of lack of power. Power is not delegated to municipal bodies to pass ordinances which are wholly unreasonable. An example of this principle is found in *Le Feber v. West Allis,* 119 Wis. 608, 97 N. W. 203, where an ordinance granting lighting franchises, which was also a contract, was held void for unreasonableness, and it was said that legislative power was delegated to subordinate political divisions of the state for public purposes only, and that if an act be so remote from every public purpose that no relation thereto can within human reason be discovered, such an act must be deemed to be beyond the power of a subordinate legislative body, and will be set aside by the courts. See, also, *Clason v. Milwaukee,* 30 Wis. 316; *Stafford v. C. V. E. R. Co.* 110 Wis. 331, 85 N. W. 1036, and cases cited.

It is said in McQuillan on Municipal Ordinances (sec. 161) : "Neither the motives of the members nor the influences under which they acted can be shown to nullify an ordinance duly passed in legal form, within the scope of their corporate powers." Mr. Dillon, in his work on Municipal Corporations, at sec. 311 (4th ed.), says: "It is doubtless true that the courts will not in general inquire into the motives of the council in passing ordinances." He follows this statement with the remark: "We suppose it to be a sound proposition that their acts, whether in the form of resolutions or ordinances, may be impeached *for fraud,* at the instance of persons injured thereby." This seems to be simply the author's own view.

In *Soon Hing v. Crowley,* 113 U. S. 703, 5 Sup. Ct. 730, it was said by Mr. Justice FIELD in the opinion of the court relating to a city ordinance claimed to be unreasonable:

"The rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they

may be disclosed on the face of the acts or inferable from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactments. . . . The diverse characters of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, preclude all such inquiries as impracticable and futile."

In the case of *Knapp-Stout & Co. Co. v. St. Louis,* 156 Mo. 343, 56 S. W. 1102, an ordinance vacating part of a street was attacked by a property owner on the street on the same grounds as in the present case, and the court said that in the absence of fraud the passage of such an ordinance comes within the legislative powers expressly delegated to the city by its charter to vacate streets and alleys, and that power will not be controlled or reviewed by the courts. In the case before us neither fraud nor corruption is alleged, so that it is unnecessary for us to consider the suggestion of Mr. Dillon and the Missouri supreme court. The sole claim is that the council have vacated a part of a street for a private use when it was needed by the public. This means that the motives of the councilmen were wrong and their judgment unsound. We think the courts will not entertain an inquiry into the truth of these charges. The ordinance was within their power to pass. On its face it purports to be passed for a purely public purpose. Such a purpose is entirely possible, notwithstanding a private benefit may at the same time inure to the defendant. The exemption from keeping in repair a wide street and the lessened expense of caring for a narrow one may have been considered an entirely adequate public gain to justify the vacation, and who shall say that the aldermen did not have this idea in mind?

Doubtless had the council attempted to sell and convey a part of the street to the defendant, its action could be held void by the courts, because that would be an act beyond its

power; but it was within the power of the council to vacate the street, when in its judgment the public interest required such action, and even though the council may have been wrong in its judgment, or may have mistaken a private interest for a public one, our conclusion is that the courts cannot arrest the operation of the ordinance for these reasons, and hence that no cause of action is stated in the first count of the complaint.

The second count, however, presents an entirely different question. By the ordinance here attacked the council attempted to grant to the defendant the right to bridge over the remaining twenty feet of the street not vacated, and build buildings to any height thereon, for private uses, provided it left a passageway twenty feet wide and fourteen feet in height, and kept the same lighted, paved, and in repair, as required by the council. It is impossible for us to perceive how it can be claimed that the council had power to grant any such rights to any one in a public street. So long as it remains a street, it is reserved for public uses and for public uses alone, and the council has no power to devote any part of it to private uses, even though that part be merely a part of the space above the roadbed. Elliott, Roads & Streets (2d ed.) § 647. In *Reimer's Appeal,* 100 Pa. St. 182, it was well said, in reference to this identical question of the power of a common council to authorize the building or projections over the street and sixteen feet above the sidewalk:

"The right of passing along or over a road has connected with it certain incidents which are essential to the enjoyment of it, such as light, air, and view. If a highway should be covered over, for instance, by the owners of property fronting on either side of it, so as to shut out the light from above, the enjoyment would not only be greatly interfered with, but it might often be rendered dangerous and practically useless."

The same doctrine is held with reference to a private bridge over an alley in the case of *Field v. Barling,* 149 Ill.

556, 37 N. E. 850, where a number of authorities along the same line are cited and reviewed. Common councils have no authority to turn a street into a tunnel for the purpose of granting to private parties for private use the enjoyment of everything above the tunnel. The proposition needs no authority. The council holds the easement in the street for public use alone. The attempt to divert a part to private use is an attempt to exceed their powers, and hence, under principles already stated, can be controlled by the courts. It follows that the second count in the complaint states a good cause of action.

*By the Court.*—Judgment reversed, and action remanded with directions to enter an order sustaining the demurrer as to the first cause of action, and overruling the same as to the second cause of action, and for further proceedings according to law.