GRACE C. GREENE, Plaintiff, v. GOODWIN SAND & GRAVEL COMPANY, Defendant.

PAULINE C. McKINLEY, Plaintiff, v. GOODWIN SAND & GRAVEL COMPANY, Defendant.

(Supreme Court, Nassau Special Term, May, 1911.)

Highways — Abandonment and discontinuance — Proceedings to discontinue — Order — Necessity of finding highway uses; Order must be made by the action of commissioners present at hearing.
Injunction — Who and what may be enjoined — Interference with property rights by persons — Interference with right of way.
Officers — Privileges, powers and liabilities — Official boards — Manner of action — Necessity that all meet.

Those living upon a highway that affords them access to other places may maintain an action to prevent the demolition of a section of the highway, though that portion threatened with destruction is not the part upon which their lands abut and the abutting owners at the point of demolition consent thereto.

Where, in proceedings to close a road, there is no finding by the highway commissioners that the road has become useless, and the consent of the town board was voted at a meeting where a quorum was not present, signed by those who were there and afterward signed by another member of the board in another place to make up the requisite number of signatures, an order to close the road made as a result of such a proceeding is ineffectual.

ACTION to restrain the defendant from closing, excavating or interfering with any part of a highway.

Charles N. Wysong, for plaintiff Greene.

Coudert Brothers (Howard Thayer Kingsbury, Henry B. Culver and Charles N. Wysong, of counsel), for plaintiff McKinley.

Charles R. Weeks (John J. Graham, of counsel), for defendant.

PUTNAM, J.   These suits arise out of the attempted clos-
ing of a highway, leading from Port Washington to Sands
Point and sometimes designated as the Barcas Point road.
It is testified to be an ancient thoroughfare, and is re-
membered as an old road by an aged witness able to speak of
it as such in the period of 1835 and 1840.   Until what is
known as the Middle Neck road had been opened, it was the
only means of communication from Port Washington to
Sands Point and is still much traveled, being the direct route
from several residences to Port Washington.

The defendant is a gravel company (organized under the
laws of Maine) which owned on both sides of this road lands
from which it was taking out gravel.   On August 10, 1909,
the defendant applied to the highway commissioners of North
Hempstead for the discontinuance of some 2,000 feet of this
highway.   It was represented by Mr. Weeks as attorney.
Section 191 of the General Highway Law authorized them to
close or alter a highway, and they could, " with the written
consent of the town board, make an order laying out or alter-
ing a highway, or discontinuing a highway, which has be-
come useless since it was laid out."   Under this statute the
defendant made application to the highway commissioners
" to close and abandon the old road " and to open a new road,
accompanied by terms purporting to release the town " from
all damages by reason of the closing of said old road, and
from all damage arising by reason of the opening of said
new road."   Mr. Wysong, who had been previously retained
by certain residents to oppose the application, asked for an
adjournment; but this was refused, and, by a majority vote,
the commissioners proceeded to make an order declaring
this highway abandoned.   Application was then made to the
town board (whose consent was necessary) to authorize this
action.   It was composed of the supervisor (Mr. Christ),
town clerk (Mr. Wood), and Justices Dodge, Weeks, Wy-
song and Remsen.   All appear to have been present except
Justice Remsen.   The board was sitting in Manhasset.   Jus-
tices Weeks and Wysong having had professional relations
with the parties declined to participate in any action,
though present.   This left only three qualified to vote — one

13

less than a majority. These three, however, cast their votes in favor of the application, and signed the consent, whereupon the meeting adjourned. This "consent" was afterward taken to Port Washington, where later in the same afternoon it received the signature of Justice Remsen, when the consent was filed. The defendant, having secured these consents, proceeded to close the road by barricades, which the inhabitants at first removed; and thereafter excavations were begun with steam shovels. The defendant also opened a temporary road through the woods.

Mrs. Greene, one of the plaintiffs, then sought relief in equity, and obtained a restraining order. The first restraining order was vacated, but an amended complaint followed, with a second restraining order.

Mrs. McKinley started certiorari proceedings, and afterward came into equity in aid of that legal remedy.

The commissioners made no attempt to find that the road now to be abandoned had become "useless." The so-called consent by the town board was by less than a legal quorum of its members. Gen. Const. Law (Consol. Laws, chap. 22), § 41. The subsequent signature of Justice Remsen, procured after the board had adjourned, was ineffective. Keeler v. Frost, 22 Barb. 400; People ex rel. Hervey v. Nostrand, 46 N. Y. 375. Accordingly, the proceedings purporting to close and discontinue the road were not in conformity with the statute and were, therefore, invalid.

Assuming, therefore, that defendant's closure and threatened destruction of the highway amounted to a nuisance, have the plaintiffs such a standing here as entitles them to this relief by injunction?

The argument that equity will not review the action of subordinate town boards is not really in point, because these suits are not for that purpose. The suits are to prevent complete demolition of an ancient highway in general use. In the words of Scudder, J., on continuing the injunction in this case: "The demolition of a public highway is an act which in law amounts to a public nuisance. It is a nuisance per se. It was unnecessary for plaintiff to allege in the complaint that the acts of the defendant in demolishing the highway were unlawful; the acts speak for themselves."

The testimony abundantly shows that the highway in question was a necessary means of daily access to the railroad station, post-office and shops at Port Washington, and that its destruction would work particular damage to the plaintiffs. The plaintiffs' lands, however, do not bound upon the portion of the road in controversy. One is about five-eighths of a mile, and the other about three-fourths of a mile, from this portion of the road.

Such acts, causing special damage to owners of land on such highway, impairing a right of access, give a right of action to the injured private owner. Ackerman v. True, 175 N. Y. 353; Wakeman v. Wilbur, 147 id. 657; Van Brunt v. Ahearn, 13 Hun, 388. In the latter case, it was said that the court " can administer relief in this class of cases on broad principles of justice, without reference to technicalities which formerly prevailed on this subject in courts of law."

It is, however, claimed that certain decisions refusing certiorari to review street and highway closings have limited the rights of such landowners as do not abut on the precise part of the road which is to be discontinued. This may be so where the town authorities validly determine that a road has become useless. The line of authority that denies damages to remote abutters upon a street, on the supposed ground that they are not legally affected by discontinuing other parts of the street, are actions or proceedings at law. Smith v. City of Boston, 7 Cush. 254; Reis v. City of New York, 113 App. Div. 464. Defendant also cites People ex rel. Bushnell v. Newell, 131 App. Div. 555, holding that such remote abutters are not legally affected by a closure beyond their own boundaries. The original statement of this doctrine, however, was not the broad generalization now asserted. Shaw, Ch. J., in Smith v. City of Boston, *supra,* said (p. 257): " We do not mean to be understood as laying down a universal rule that in no case can a man have damages for the discontinuance of a highway unless his land bounds upon it, although as applicable *to city streets, intersecting each other at short distances,* it is an equitable rule."

Applied to the road here in question, it would be hard to find a more inequitable result than are the consequences of

such a doctrine. Defendant's contention would lead to this:
Once given a consent of two opposite abutting landowners,
no one could then prevent the destruction of the highway be-
tween them — without regard to the rights of the other land-
owners along the line of this sundered roadway. Mere ob-
structions in a highway, easily removable ordinarily, are but
a temporary and passing inconvenience. Here was threat-
ened the entire carrying away of the roadway by steam
shovels that would quickly transform its surface into a deep
excavation, doing damage truly irreparable to those whose
business called them to pass and repass over this roadway in
their daily course. The power to alter a highway means to
improve its direction, so that it may better serve public in-
terests. People v. Judges Cortlandt Co., 24 Wend. 491.
Where, instead, the roadway is about to be destroyed and its
material physically removed, the courts are not limited to
reviewing the proceedings *by certiorari*, but should interfere
to restrain such threatened injury. Both plaintiffs are en-
titled to injunctive relief, which as to Mrs. McKinley is an-
cillary to her certiorari proceedings.

Decrees (to be settled on notice) are given in both cases
restraining defendant from closing, excavating or interfering
with any part of this highway, with costs.

Ordered accordingly.