## CENTRAL OF GEORGIA RAILWAY CO. *v.* BIBB BRICK CO.

1. In view of the act of August 18, 1913 (Acts 1913, p. 977), the contract which was made between the Mayor and Council of the City of Macon and the Central of Georgia Railway Company on October 27, 1914, and the act of July 30, 1915 (Acts 1915, p. 696), and under the pleadings and evidence in the case, there was no abuse of discretion in granting an interlocutory injunction restraining the Central of Georgia Railway Company from so closing up Pine street in the City of Macon as to interfere with the hauling by the plaintiff company of its manufactured products into the city over said street, and with free access to and egress from its plant.

(a) The presiding judge at the same time provided that the injunction should not prevent the defendant from doing such work as could be done under the present plan, or any modification thereof, as would not interfere with the free use of so much of the street as would be necessary to enable the plaintiff to do such hauling or to have such access to and egress from its plant.

2. Evidence tending to show that the construction of the underpass as contemplated would decrease the market value of the plaintiff's property, and would render it impossible to haul more than half the amount of its products at a load through such underpass, as compared with the amount which could be previously hauled, was relevant.

(a) As against the objection urged thereto, it was not error to admit the evidence set out in the seventh and eighth assignments of error. If any part of such evidence was objectionable for any reason, or if the evidence set out in the ninth assignment of error was subject to objection, the admission of such evidence on the hearing of the application for interlocutory injunction was not sufficient to require a reversal of the grant of such injunction.

APRIL 15, 1916.

Injunction.   Before   Judge   Mathews.   Bibb   superior   court. November 18, 1915.

By the act of August 18, 1913 (Acts 1913, p. 977), authority was granted to the Mayor and Council of the City of Macon to close certain streets in connection with the construction of a union passenger-station in that city, on certain conditions. Section three reads as follows: "Be it further enacted by the authority aforesaid, that the Mayor and Council of the City of Macon is hereby

authorized to close up and discontinue for use as a public street that part of Pine Street in the City of Macon lying between Fifth Street and Sixth Street in said city. Full authority is given hereby to the Mayor and Council of the City of Macon to completely abolish that part of Pine Street lying between Fifth Street and Sixth Street, the same to be used for railway purposes. Should the Mayor and Council authorize the closing of Pine Street as above mentioned, a street shall be opened by the Central of Georgia Railway Company from Fifth Street to Sixth Street by way of Plum Street, said street to be the width of Plum Street, to wit: sixty-six and two thirds (66-2/3) feet, and shall be laid off from the intersection of Plum Street and Fifth Street through and across the property of the Central of Georgia Railway Company to Pine Street at the Central railroad shops, so as to make it continuous. The title to said street shall be vested in the Mayor and Council of the City of Macon by the Central of Georgia Railway Company, before any of the terms of this act shall become operative; and the Mayor and Council of the City of Macon shall have full power and control over said street, and with full power to require the construction and maintenance of viaducts or under-passage for railroad-tracks, whenever in its discretion the public necessities shall require." Section four required the Central of Georgia Railway Company, in order to receive the benefits of the grants mentioned in the act, within sixty days from its passage to signify in writing to the mayor and council, and to the railroad commission of the State, an acceptance of its provisions and of the grants authorized, subject to the conditions of sections two and three, and an intention to build the union station; "provided, nevertheless, that the Central of Georgia Railway Company shall have no right or title to any of the property herein described, or to close any of the streets hereinbefore mentioned, or any part thereof, until it has faithfully complied with all the terms and conditions of this act. . . This act is intended to authorize the Mayor and Council of the City of Macon to enter into a contract with the Central of Georgia Railway Company, upon such terms and conditions as may be prescribed by it, not in conflict with the terms of this act, and the Central of Georgia Railway Company shall acquire no right to close any of said streets, or any title to any of the lands in said streets and alleys, except upon its

faithful compliance with all the terms and conditions of this act and of the contract with the Mayor and Council of the City of Macon herein provided for." By section five provision was made for the payment, to persons owning property on the streets to be closed, of damages resulting to the property.

On October 27, 1914, the Mayor and Council of the City of Macon and the Central of Georgia Railway Company entered into a contract in regard to the construction of the union passenger-station and the closing of the streets.. It was recited that the railway company, within sixty days after the passage of the act of 1913, did signify its acceptance of the terms and conditions of that act, and that it was necessary to rearrange and reconstruct the yards, tracks, and terminal facilities, in order to build the station. Among other terms of the contract were the following: "The party of the first part hereby grants to the party of the second part the full width of Cherry Street from the original north line of Sixth Street to the present south line of Fifth Street; also the full width of Wall Street alley from the original north line of Sixth Street to the present south line of Fifth Street; also the full width of Pine Street from the original north line of Sixth Street to the present south line of Fifth Street. All of the above and foregoing conveyances are made and agreed to be made in compliance with said act of August 18th, 1913, and are intended to vest the title to said property in the party of the second part as provided therein." The sixth section of the contract was as follows: "Said party of the second part further agrees to put in at its own expense, and under the supervision and direction of the city engineer, a subway under the present existing and proposed tracks at Pine Street in the vicinity of Sixth Street, and to open up a street across its property in block fifty-six, connecting said subway with Plum Street. Said street to be forty feet in width as the continuation of Plum Street on the south line of Fifth Street and along the east line of block fifty-six. Said strip of land or street then to continue, at an angle right, a width of not less than thirty-five feet crossing block fifty-six and gradually reducing in width to conform to width of said subway at the entrance. Said street being shown on the map hereto attached. colored in brown. Said street running across block fifty-six shall be paved by the party of the second part from the end of the under-

pass to its intersection with Fifth Street, under the direction and supervision of the city engineer and according to the plans and specifications furnished by him. The driveway of said Pine Street subway to be twenty-one feet in width with an elevated four-foot sidewalk therein." The seventh section was as follows: "The plans and specifications for said subway shall be approved by the city engineer; and when the same has been completed and opened up for public travel, the title thereto, as well as to the street emerging therefrom through block fifty-six and to the intersection of Plum and Fifth Streets, shall, without further instrument of conveyance, be vested in the City of Macon, as provided in said act of August 18, 1913, and thereupon the party of the second part may close that part of Pine Street between Fifth and Sixth Streets, hereinbefore referred to, and not before." The ninth section was as follows: "All of the grants, rights, powers, privileges, and conveyances from the party of the first part to the party of the second part, as contained in this contract, are made upon the express condition that the title to said property shall not pass and vest in the said party of the second part, until it, the said party of the second part, its successors or assigns, have faithfully complied with all of the terms and conditions of this contract, as well as said act of the General Assembly of Georgia, approved August 18th, 1913, and found on pages 977 to 982 of the published Acts of Georgia for 1913, which said act is hereby referred to and made a part of this contract. However, it is expressly understood and agreed between the parties hereto that when terms and conditions of said act and this contract have been faithfully complied with, then and thereupon all rights, title, claim, or interest held or owned by the City of Macon or the State of Georgia in and to the portions of streets hereinbefore conveyed shall thereupon vest in the said Central of Georgia Railway Company, its successors or assigns, in accordance with the provisions of said act of August 18, 1913, without the execution of further instrument of conveyance."

By the act of August 12, 1914 (Acts 1914, p. 979), authority was granted for the union station to be constructed and operated by a terminal company. By the act of July 30, 1915 (Acts 1915, pp. 692, 696), another amendment was made to the charter of the City of Macon, which contained, among other things, the follow-

ing provisions: In section 8 it was declared that the contract entered into between the City of Macon and the Central of Georgia Railway Company "be and is hereby ratified and approved." By section nine it was declared that "The City of Macon is hereby authorized and empowered to grant, upon such terms and conditions as may be prescribed by the mayor and council of said city, to the Central of Georgia Railway Company, its successors and assigns," a part of Mulberry Street, certain alleys, a part of Poplar Street, and "the full width of Plum Street between Fifth and Sixth Streets, except the forty (40)-foot street provided for in article six of the contract of October 27, 1914." Section ten is as follows: "Be it further enacted by the authority aforesaid, that the City of Macon is hereby specifically authorized to modify and amend the conditions on which the title to portions of the property granted by and included in said contract, or that are authorized to be granted under this act, shall vest in the grantee or its assigns, by eliminating the condition that the grantee shall have complied with all of the terms and conditions of said contract, as well as of said act of the General Assembly of Georgia approved August 18, 1913, and to substitute therefor the condition that the Central of Georgia Railway Company or its grantee, the Macon Terminal Company, shall have first erected and constructed a Union Passenger Station or depot at and near the intersection of Cherry Street and Fifth Street, as provided in the act of August 18, 1913, according to the plans and specifications heretofore or hereafter submitted to and approved by the Railroad Commission of Georgia and the Mayor and Council of the City of Macon, including the construction of Poplar Street subway between Fifth and Sixth Streets, before the title to said property shall vest, as aforesaid." Section eleven is as follows: "Be it further enacted by the authority aforesaid, that nothing contained in this act shall relieve the Central of Georgia Railway Company from any of the obligations or liabilities cast upon it or assumed by it under said acts approved August 18, 1913, and August 12, 1914, or any order of the railroad commission with respect to the building of said union passenger-depot, or from any of the obligations or liabilities resting upon it in said contract dated October 27, 1914; but every such obligation and liability, except in so far as they may be modified by contract between the City of Macon and the Central of Georgia

Railway Company to the extent authorized by this act and to no greater extent, shall remain of full force and effect as against said Central of Georgia Railway Company; and the enforcement thereof may be compelled by mandamus or any other appropriate remedy."

The Bibb Brick Company filed its equitable petition to enjoin the closing up of a part of Pine Street, alleging, that the railway company was not proceeding in accordance with the act of 1913; that the plaintiff was a manufacturing company operating a plant on land in which the plaintiff had an estate for years granted by the city, and acquired for the purpose of erecting a plant and conducting the business of manufacturing and selling brick; and that its means of reaching the central portion of the city was by way of Pine Street. Upon the hearing of the application for an interlocutory injunction, evidence was introduced which need not be here set out. The court granted an injunction restraining the defendant from so closing Pine Street as to interfere with the hauling by the plaintiff of its manufactured products into the city over such street, and with free access to and egress from the plant of the plaintiff into the city; but provided that this injunction should not prevent the defendant from doing such work as could be done under its present plans or any modification thereof as would not interfere with the free use of so much of the street as is necessary to enable the plaintiff to do such hauling, or to have such access to and egress from its plant. The defendant excepted.

*Jordan & Lane,* for plaintiff in error.

*John R. L. Smith* and *Grady C. Harris,* contra.

LUMPKIN, J. From the foregoing statement of facts it will be seen that the act of 1913 expressly declared, that, if the mayor and council should authorize the closing of Pine Street between Fifth and Sixth Streets, a street should be opened by the railway company from Fifth Street to Sixth Street by way of Plum Street, which should be of the width of Plum Street, viz., sixty-six and two thirds feet wide; and that the title to such street should be vested in the mayor and council "before any of the terms of this act shall become operative." It was also declared that the mayor and council should "have full power and control over said street, and with full power to require the construction and maintenance of viaducts or underpassage for railroad-tracks, whenever in its dis-

cretion the public necessities shall require." Thus the opening by the railway company of a new street sixty-six and two thirds feet in width, connecting Plum and Pine Streets, and the vesting of the title thereto in the mayor and council, was distinctly made a condition precedent before any of the terms of the act should become operative. The conferring on the mayor and council of the further power to require the construction and maintenance of viaducts or underpassage, whenever in their discretion the public necessity should require this to be done, did not authorize them to accept a new street forty feet in width for a portion of its length, instead of sixty-six and two thirds feet in width, and narrowing to an underpass twenty-one feet wide. Not only did the legislature declare in terms what should be the width of the new street, and make its opening and the vesting of title to it in the city a condition precedent, but care was taken to reiterate that the railway company should have no right or title to any of the property described in the act or right to close any of the streets mentioned, "or any part thereof," until it should have "faithfully complied with all the terms and conditions of this act." The mayor and council were authorized to enter into a contract with the railway company upon such terms and conditions as might be prescribed by it, "not in conflict with the terms of this act;" and, as if to be certain beyond peradventure that the railway company must comply with the terms of the act, and that the mayor and council should not be authorized to contract otherwise, it was again declared that the railway company should acquire no right to close any of the streets sought to be closed, or acquire any title to any of the lands in said streets and alleys, "except upon its faithful compliance with all the terms and conditions of this act and of the contract with the Mayor and Council of the City of Macon herein provided for." The contract might add other terms, but it could not change or destroy those expressly imposed by the act itself. In the contract the railway company agreed to construct a subway under the existing and proposed tracks at Pine Street in the vicinity of Sixth Street, and to open a street connecting such subway with Plum Street, such new street to be forty feet in width for some distance, then turning and having a width of not less than thirty-five feet, and gradually narrowing to conform to the width of the subway at its entrance, the driveway through which

was to be twenty-one feet in width, with an elevated four-foot sidewalk. Also in a succeeding paragraph it was stated that the plans and specifications for the subway should be approved by the city engineer, and that, when it should be completed and opened for public travel, the title thereto as well as to the streets emerging therefrom should, without further instrument of conveyance, be vested in the city, and that thereupon the railway company might close that part of Pine Street between Fifth and Sixth Streets. But in a still later paragraph of the contract it was declared that all of the grants, rights, powers, privileges, and conveyances from the mayor and council to the railway company, contained in the contract, were made upon the express condition that the title to the property should not pass and vest in the railway company until it or its successors or assigns should have "faithfully complied with all the terms and conditions of this contract, as well as said act of the General Assembly of Georgia, approved August 18, 1913, . . which act is hereby referred to and made a part of this contract."

It seems to us plain that under the act of 1913, and the contract made between the mayor and council and the railway company, there was no authority for closing up a portion of Pine Street without first opening a street sixty-six and two thirds feet in width, and that this requirement constituted a condition precedent. Was this changed by the act of July 30, 1915 (Acts 1915, pp. 692, 696) ? In section 8 of that act it was declared that the contract which had been entered into between the mayor and council and the railway company, was "ratified and approved," but it did not purport in terms to amend the act of 1913. In section 9 it declared that the City of Macon was authorized and empowered to grant, upon such terms and conditions as might be prescribed by the mayor and council, to the railway company, its successors and assigns, certain parts of streets, one of them being the "full width of Plum Street between Fifth and Sixth Streets, except the forty (40)-foot street provided for in article six of the contract of October 27, 1914." Nothing was said as to the closing of a part of Pine Street which was in a southerly direction from Plum Street and apparently parallel with it. Authority was given, in section 10, to modify and amend the condition on which the title to certain portions of the property included in the con-

tract, or which might be granted under this act, should vest in the grantee, by eliminating a stated condition and inserting another in lieu of it. But in the next section it was declared that nothing in this act should relieve the railway company from any of the obligations or liabilities cast upon it or assumed by it under the acts of August 18, 1913, and August 12, 1914, or any order of the railroad commission with respect to the building of the union passenger-depot, or from any of the obligations or liabilities resting upon it under the contract of October 27, 1914; "but every such obligation and liability, except in so far as they may be modified by contract between the City of Macon and the Central of Georgia Railway Company to the extent authorized by this act and to no greater extent, shall remain of full force and effect as against the Central of Georgia Railway Company," etc. It does not appear that the contract was in fact modified to the extent authorized by the act of 1915, but it stands as originally made. This was not sufficient to operate as an amendment of the act of 1913, so as to permit the closing of a part of Pine Street as now proposed.

From what has been said it follows that the presiding judge did not err in holding, in effect, that the closing up of Pine Street, as intended, would not be lawful.

There was evidence tending to show, that, under a lease from the city, the plaintiff occupies certain land southeasterly from the point at which it was intended to close a part of Pine Street; that it manufactures brick; that the lease under which the plaintiff holds authorizes the operation of a manufacturing enterprise there; that while the land occupied by the plaintiff does not abut directly upon Pine Street, it is very near thereto, and that street is the only one by which the people of Macon who are customers of the plaintiff can have convenient access to its plant, and by which the plaintiff can deliver its manufactured products to its customers in the city; that the closing of Pine Street between Fifth and Sixth Streets to travel and traffic would work substantial injury to the plaintiff's business and property; that certain other streets by which it was contended that the plaintiff could reach the center of the city were merely streets on paper; and that though there were other means of access to and egress from the plaintiff's plant into the business and residence portions of the city, such means were

much more difficult and expensive to use in the hauling of its manufactured products. There was also evidence that the plaintiff and another manufacturing company, which likewise sought to obtain an injunction, were the only persons located at that place; that nobody would be affected by the closing of Pine Street except them; and that the general public would not suffer any damage, except those who might have business with these companies. Under the evidence, the presiding judge was authorized to grant the interlocutory injunction. *Harvey* v. *Georgia Southern & Florida R. Co.,* 90 *Ga.* 66 (15 S. E. 783).

The present case is not controlled by the decision in *Ward* v. *Georgia Terminal Co.,* 143 *Ga.* 80 (84 S. E. 374). There an alteration and change of grade of a portion of a street in a city was permitted and sanctioned by lawful authority; the land the value of which was lessened was upon another part of the street, beyond a cross-street; and the landowner had the same communication to other parts of the city through intersecting streets, though with less convenience, over the street which was altered. Here the conditions upon which a part of Pine Street could be closed have not been complied with; and there is evidence from which the presiding judge might find that the plaintiff did not have the same communication to other parts the city through intersecting streets, merely with greater inconvenience.

The view which was taken by the presiding judge and the ruling above made render it unnecessary to consider the attacks made upon the validity of the act of 1913, on the ground that it violates certain provisions of the constitution.

The admission of the evidence complained of in the seventh and eighth assignments of error was not error for the reasons assigned. If any part of it or that set out in the ninth assignment of error was erroneously admitted, this ruling was not such as to require a reversal of the judgment.

*Judgment affirmed. All the Justices concur.*