PILGRIM PLYWOOD CORP. *v.* EMERY A. MELENDY ET AL.

May Term, 1938.

Present: MOULTON, SHERBURNE and BUTTLES, JJ., and JEFFORDS, Supr. J.

Opinion filed October 4, 1938.

*Wilson, Carver, Davis & Keyser* for the plaintiff.

*Lawrence C. Jones,* Attorney General, for the defendants, Melendy, Rixford, Kilbourn, Ellman and Brown.

*Fred E. Gleason* (*David F. Hoxie,* of counsel) for the defendant Green Mountain Power Corporation.

BUTTLES, J. The plaintiff in this suit in chancery is a Vermont corporation which is engaged in manufacturing logs into veneer and other wood products at a mill owned by it in Waterbury, Vermont. Plaintiff also owns, for use in connection with its business, a large tract of timber land in the towns of Waterbury and Bolton, situated in the valley of the Little River, also called the Waterbury River, and more particularly in that part of said valley which is drained by two tributary brooks known respectively as Cotton Brook and Ricker Mountain or Bryant Brook. Said timber lands of the plaintiff consist of about 2300 acres in the Cotton Brook area and about 2000 acres in the Ricker Mountain Brook area. A portion of said timber-land is heavily wooded with growing trees suitable to be cut at the present time and manufactured into veneer or other products, while other portions are wooded with trees not yet mature enough for cutting. The plaintiff estimates the stumpage value of the timber now suitable for cutting at $50,000.

The defendants Melendy, Rixford and Kilbourn constitute the board of public works of the State of Vermont, which board was created by No. 5 of the Acts of the Special Session of the Legislature of 1933, now chapter 207 of the Public Laws. The defendants Ellman and Brown are officers of the United States Army who have been in charge of the work and of the men engaged in the construction of the dam hereinafter referred to.

The defendant Green Mountain Power Corporation has or claims to have some interest, present or potential, in the water power that may be produced through the use of said dam.

The defendants have constructed or caused to be constructed a dam built of rolled earth and other materials across the valley of said Little River at a point a short distance down stream from the confluence of Cotton Brook and Ricker Mountain Brook with said Little River, and down stream from said timber lands of the plaintiff. It is alleged that said dam is approximately 2000 feet long and 190 feet high, with a maximum thickness of 900 feet at the base and 35 feet at the top. The only means of access which the plaintiff has had to its said lands by which timber could be removed therefrom has been a highway leading up the Little River valley near the river, and branch highways leading therefrom up the valleys of Cotton Brook and Ricker Mountain Brook respectively. Both of these branch highways end before reaching the height of land which is above the plaintiff's lands. There are no other roads leading to the plaintiff's lands and it is alleged that the only practicable location for highways by which said lands can be reached is up the valleys of said Little River and its said tributaries.

Water cannot be raised by said dam to a height sufficient to flood the lands of the plaintiff, but closing even of the lower gates with which the dam is provided will result in flooding the highway above the dam to such an extent as to make it impassable. A portion of said highway, it is alleged, is already under water. The dam is equipped with other gates at higher levels and if these are all closed and the water raised to the highest level possible the flooding of the highway will be much more extensive and the branch highways in the valleys of the brooks referred to will also be flooded to some extent. The topography of the valley is such that the highway could not be relocated therein above the section likely to be flooded except at very great expense, and the plaintiff alleges on information and belief that title to the land over which it would be necessary to build such relocated highway has been taken by the defendants for the State of Vermont. The plaintiff further alleges that defendants assured plaintiff that it would be furnished a highway or indemnified by the state board of public works, by reason of which assurance plaintiff was lulled into a belief in its own security and delayed

starting proceedings to protect its rights. No steps have been taken by the defendants to comply with their said assurance and they have since denied any liability to the plaintiff.

Said dam is being built under an arrangement between the State of Vermont, the United States Government and the Green Mountain Power Corporation. The board of public works, acting for the State of Vermont, is required to provide for the project the land, rights and rights of way, and to pay all land damages necessary to or occasioned by the construction of said dam. In the present suit in chancery the plaintiff prays that the defendants be enjoined and restrained from closing the outlets from said dam and from permitting them to remain closed in case they shall have been closed prior to the adjudication of the matter. To the bill of complaint all of the defendants demurred and upon hearing by the chancellor the demurrer was sustained by *pro forma* decree, from which decree the plaintiff has appealed to this Court.

Defendants contend that discontinuance of the highways in question is not alleged by the plaintiff in its bill of complaint to have been an illegal discontinuance and therefore can afford no basis for this action. The plaintiff does allege, however, that no proceedings have been commenced of which plaintiff had notice or knowledge, and as above stated after negotiations had been started looking to some kind of an adjustment such negotiations were broken off by the defendants who then denied any liability to the plaintiffs. This we think is a sufficient allegation that the defendants have proceeded without regard to any rights which the plaintiff may have, and it would follow that if the plaintiff has any individual rights in the matter which the law recognizes and protects, then the obstruction and destruction of highways would be illegal as to the plaintiff. We proceed to inquire whether the plaintiff has such rights.

It is well settled that "a person who suffers special damage from the erection and maintenance of a public nuisance is entitled to relief in his own right; but it must appear that the injury is distinct from that suffered by the general public." *Sargent* v. *George*, 56 Vt. 627, 631; *Willett* v. *Village of St. Albans*, 69 Vt. 330, 332, 38 Atl. 72; *State* v. *Cray*, 85 Vt. 99, 101, 81 Atl. 450, 36 L. R. A. (N. S.) 630; *Hazen et al.* v. *Perkins*, 92 Vt. 414, 421, 422, 105 Atl. 249, 23 A. L. R. 748; *First Nat. Bank* v. *Tyson*, 133 Ala. 459, 32 So. 144, 59 L. R. A. 399, 91 A. S. R.

46; *World Realty Co.* v. *Omaha,* 113 Neb. 396, 203 N. W. 574, 40 A. L. R. 1313, 1320; *Hallock* v. *Scheyer,* 33 Hun (N. Y.) 111; *Green* v. *Thresher,* 235 Pa. 169, 83 Atl. 711, Ann. Cas. 1913D, 1210; *Lewis* v. *Pingree Nat. Bank,* 47 Utah, 35, 151 Pac. 558, L. R. A. 1916C, 1260; 20 R. C. L. 477.

According to the great weight of authority this rule applies, in proper cases, to the obstruction or destruction of a public highway. It is also generally held that because of lack of an adequate remedy at law and in order to prevent multiplicity of suits relief by injunction may be had. *State* v. *Cray, supra; Sargent* v. *George, supra; Baxter* v. *Winooski Turnpike Co.,* 22 Vt. 114, 122, 52 A. D. 84; *Sholin* v. *Skamania Boom Co.,* 56 Wash. 303, 105 Pac. 632, 28 L. R. A. (N. S.) 1053; *Miller* v. *Schenk,* 78 Iowa, 372, 43 N. W. 225; *Hayden* v. *Stewart,* 71 Kan. 11, 80 Pac. 43; *Gardner* v. *Stroever,* 89 Cal. 26, 26 Pac. 618; *Ross* v. *Thompson,* 78 Ind. 90.

Defendants contend that plaintiff corporation has an adequate remedy at law by availing itself of the provisions of chapter 202 of the Public Laws and petitioning the town of Waterbury to lay out a highway giving access to its property. That this remedy is not adequate becomes apparent upon referring to P. L. secs. 4777 and 4782, from which it appears that the plaintiff might, and probably would, be required ultimately to pay at least a considerable portion of the expense of laying out a substituted highway. We think the facts disclosed in the complaint indicate very large potential damages for which plaintiff would have no adequate remedy at law, and that if the plaintiff is entitled to the protection of the law relief by injunction is warranted. The authorities are not in accord as to what circumstances are necessary to be shown by a plaintiff in order to prevail in such cases. There are cases which hold that relief is available to abutting owners only, while other courts allow recovery to non-abutters as well, provided there is a sufficient showing of special damage distinct from the injury suffered by the general public. This is undoubtedly the rule followed by the majority of the courts.

There is also a conflict among the authorities as to what constitutes the necessary special damage, which it is said must be different in kind and not merely in degree from that suffered by the general public. It is generally held that one whose means of ingress to and egress from his property is completely cut

off by an obstruction suffers a special injury different from that suffered by the public at large, *Cushing-Wetmore Co.* v. *Gray,* 152 Cal. 118, 92 Pac. 70, 125 A. S. R. 47; *Cummins* v. *Seymour,* 79 Ind. 491, 41 A. S. R. 618; *Cole* v. *Sprowl,* 35 Me. 161, 56 A. D. 696; *Slaughter* v. *Meridian Light, etc., Company,* 95 Miss. 251, 48 So. 6, 1040, 25 L. R. A. (N. S.) 1265; *Egerer* v. *N. Y. C., etc., R. R. Co.,* 130 N. Y. 108, 29 N. E. 95, 14 L. R. A. 381; *Crawford* v. *Marion,* 154 N. C. 73, 69 S. E. 763, 35 L. R. A. (N. S.) 193; *Tilly* v. *Mitchell, etc., Co.,* 121 Wis. 1, 98 N. W. 969, 105 A. S. R. 1007, as, for example, where the obstructed way affords the only means of getting to market with the products of his adjoining farm. 13 R. C. L. 231; *Bembe* v. *Anne Arundel County,* 94 Md. 321, 51 Atl. 179, 57 L. R. A. 279; *Smith* v. *Mitchell,* 21 Wash. 536, 58 Pac. 667, 75 A. S. R. 858.

As stated in *Brakken* v. *Minneapolis, etc., R. Co.,* 29 Minn. 41, 43, 11 N. W. 124, 125: "It may not be very important to the general public whether they shall be able to get to the private property of an individual, but it is important to the individual whether he should be able to get to and from his residence or place of business, and whether the public have the means of getting there for social or business purposes."

In some states it has been held that something less than a complete cutting off of access was sufficient to constitute special injury to abutting owners but not to non-abutters. However, we need not give consideration to these cases since in the case before us, while the lands of the plaintiff are not contiguous to the portions of the highway proposed to be flooded, yet it appears that all available and practicable means of ingress to and egress from the plaintiff's property would be completely cut off. Under such circumstances the generally prevailing and we think better reasoned rule gives relief to the non-abutting as well as to the abutting owner. *Hill* v. *Hoffman,* Tenn. Ch. App., 58 S. W. 929; *Patterson* v. *Ravenna Twp.,* 229 Mich. 133, 201 N. W. 188; *Greene* v. *Goodwin Sand & G. Co.,* 129 N. Y. S. 709, 72 Misc. 192; *Jones* v. *Bright,* 140 Ala. 268, 37 So. 79; *Patton* v. *Forgey,* 171 Mo. App. 1, 153 S. W. 575; *Tilly* v. *Mitchell & L. Co.,* 121 Wis. 1, 98 N. W. 969, 105 A. S. R. 1007; *Sloss-Sheffield Steel & I. Co.* v. *Johnson,* 147 Ala. 384, 8 L. R. A. (N. S.) 226, 41 So. 907, 119 A. S. R. 89, 11 Ann. Cas. 285; *Central of Ga. Ry. Co.* v. *Bibb Brick Co.,* 145 Ga. 149, 88 S. E. 676.

''Where a road is shown to be an existing public highway a private individual is entitled to an injunction against encroachments or obstructions thereon, when, and only when, he has sustained special damage, different not merely in degree but in kind from that suffered by the public at large. * * * Where an obstruction cuts off access to property used for business or other purposes injunction will lie on the ground of special damages.'' 29 C. J. 627 *et seq.* We think the foregoing states the correct rule, and further that in a proper case, as in the one now before us, the remedy should not be restricted to abutting owners but should be available as well to owners who are cut off from property which is not contiguous to the highway at the place where the obstruction occurs.

The defendants cite and quote in their briefs from several Vermont cases including *Hatch* v. *Vt. Cent. R. R. Co.*, 25 Vt. 49 and 28 Vt. 142; *Richardson* v. *Vt. Cent. R. R. Co.*, 25 Vt. 465, 60 A. D. 283; *Sabin* v. *Vt. Cent. R. R. Co.*, 25 Vt. 363; *Stewart* v. *Rutland*, 58 Vt. 12, 4 Atl. 420 and *Essex Storage Elec. Co., Inc.* v. *Victory Lumber Co.*, 93 Vt. 437, 108 Atl. 426, which cases discuss incidental and consequential damages resulting from the taking of land by appropriate proceedings for public or *quasi* public uses. We do not regard these cases as being in point in the present controversy, for one reason because it does not appear in the present case that there has been, as yet, any taking of land, by legal proceedings, for public purposes. Furthermore, in none of the cases referred to was the destruction or complete obstruction of a public highway involved, and in none of them was the plaintiff threatened with deprivation without compensation of all available and practicable means of reaching extensive and valuable property—a deprivation apparently in conflict with the fundamental principles of equity and law.

It appears that the dam referred to is to be used mainly for the public purpose of flood control. We are therefore of the opinion that any injunctive relief should be suspended for a reasonable time, in order to give opportunity to the defendants to acquire, by negotiation or otherwise, if other means be available, the right to flood the highways herein referred to.

*Decree reversed. Demurrer overruled.*