STATE *v.* EUGENE J. CRAY.

May Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed October 9, 1911.

*Police Power—Health—Offences—P. S. 5902—Distributing Sample Drugs—Liability of Master for Servant's Acts.*

P. S. 5902, punishing one who distributes or causes to be distributed a trial sample of medicine, by leaving it exposed so that children may become possessed thereof, is an exercise of the police power of the State, and an action for its violation, though criminal in form, is civil in nature, designed to prevent the recurrence of what constitutes a public nuisance; and so a master is liable for the acts of his servant in distributing a free sample of medicine by handing it to a child four years old, though the servant acts in violation of the express general instructions of the master, for the question of intent is immaterial.

At common law infants, as well as idiots, are under the care and protection of the sovereign, as persons equally unable to care for themselves.

Generally a public nuisance is punishable only by indictment, and no private

action can be maintained to recover damages from a public nuisance, nor for an injunction to abate it, unless the complainant has thereby suffered injury beyond that resulting to the rest of the public.

INFORMATION for distributing a trial sample of medicine in violation of P. S. 5902. Plea, not guilty. Trial by the City Court of Burlington on March 9, 1911, *Mower*, Judge. Judgment that the respondent is guilty, to which he excepted. The opinion states the case.

*Max L. Powell* for the respondent.

*Harry B. Shaw, State's Attorney,* for the State.

The court below made no error. This case is governed by *State* v. *Gilmore*, 80 Vt. 514. The question of intent is not material. If the State has to prove criminal intent in violation of police regulations, the public health and morals would not be adequately protected. *State* v. *Perkins*, 42 Vt. 399; *State* v. *Tomassi*, 67 Vt. 312; *State* v. *Ward*, 75 Vt. 438; *Williams* v. *State*, 69 Ohio St. 570; *Groff* v. *State*, 171 Ind. 547, 85 N. E. Rep. 769.

WATSON, J. The respondent is complained against for distributing and causing to be distributed at Burlington, on the day named, a free sample of a certain medicine known as "De-Witt Kidney and Bladder Pills" by handing the same to one Rosie Parrotti, a child of the age of four years, in violation of the provisions of P. S. 5902. By that section, "A person, firm or corporation that distributes or causes to be distributed a free or trial sample of a medicine, drug, chemical or chemical compound, by leaving the same exposed upon the groond, sidewalks, porch, doorway, letter box or in any other manner, that children may become possessed of the same, shall be fined," etc.

No question is made but that on the facts presented this statute was violated at the time and place and in the manner set forth in the complaint, not by the respondent in person, but by his agent or servant, acting with him in distributing at houses

in Burlington free samples of the pills named. The record shows that before sending this agent or servant out to make such distribution, the respondent expressly cautioned and instructed him against delivering the sample boxes to children.

The sole question, therefore, is, whether the master is liable under the statute, for the acts of his servant in violation thereof against his general instructions.

This statute is in exercise of the police power for the general protection by the State, as *parens patriae,* of children within its domain, they being incapable of protecting themselves. At common law, infants as well as idiots, are under the care and protection of the sovereign, as persons equally unable to take care of themselves. *Eyre* v. *Countess of Shaftsbury,* 2 P. Wm. 102. Lord Hardwick said that "in respect of lunatics, idiots and infants the king is bound to take care of them." *Smith* v. *Smith,* 3 Atk. 304.

This legislation does not prohibit the distribution of free or trial samples of such articles as are therein named, but it does undertake to regulate their distribution in the interests of humanity, by making it a technical crime to leave the article exposed in the places named or in any other manner, whereby the possession thereof may be had by children, persons of limited understanding, perhaps to their own injury, or to the injury of others of the same class. It pertains to their physical well-being and hence to the interest of the State. The action given for its violation, though criminal in form, is in substance more particularly civil in nature designed to prevent the recurrence of that which constitutes a public nuisance. No private action can be had by a person to recover damages for a public nuisance, nor for an injunction to abate such nuisance, unless he has suffered an injury peculiar to himself beyond that by the rest of the public. *Baxter* v. *Winooski Turnpike Co.,* 22 Vt. 114, 52 Am. Dec. 84; *Sargent* v. *George,* 56 Vt. 627. It is the general rule that common nuisances against the public are punishable only by indictment. In *State* v. *Vermont Central R. R. Co.,* 27 Vt. 103, the railroad company was indicted for a nuisance in obstructing a public highway, by building and maintaining their depots within its limits, and by "unlawfully and injuriously suffering their engines and cars, and also horses,

carts, wagons, etc., to remain in said highway, a great and unreasonable length of time." It was contended that the corporation was not liable to indictment because its agents and officers had erected and maintained a common nuisance; but that the only remedy was against such officers and agents; that it cannot be indicted for positive misfeasance of its agents, inasmuch as such persons are not the company's agents for any such purpose. Holding the corporation liable, the Court said an indictment for a nuisance is only a mode of trying the right, in a public form, the same right that is involved in every private action, for the same reason. In *Reg* v. *Stephens*, Law Rep. 1 Q. B. 702, the respondent was indicted for obstructing the navigation of a public river by casting and throwing, and causing to be cast and thrown, slate, stone and rubbish in and upon the soil and bed of the river, etc. The respondent was the owner of a slate quarry, but because of his great age was unable personally to superintend the working of it. Quantities of rubbish from the quarry were from time to time shot by respondent's workmen on a certain spot from which it slid into the river, by means of which navigation was obstructed. Respondent was prepared to offer evidence that the workmen had been prohibited by him and his sons from thus depositing the rubbish, and that they had been told to place it in a certain other place provided for that purpose. The trial judge intimated that this evidence was immaterial, and instructed the jury that as the respondent was the proprietor of the quarry, the quarrying of which was carried on for his benefit, it was his duty to take all proper precautions to prevent the rubbish from falling into the river, and that if a substantial part of the rubbish went into the river from having been improperly stacked so near the river as to fall into it, the respondent was guilty of having caused a nuisance, although the acts might have been committed by his workmen, without his knowledge and against his general orders. A rule having been obtained for a new trial, on the ground that the judge misdirected the jury that the respondent would be liable for the acts of his workmen in so depositing the rubbish as to become a nuisance, though without his knowledge and against his orders, Judge Mellor said that though an indictment, it was in substance in the nature of a

civil proceeding; that the only reason for proceeding criminally
was that the nuisance affected the public at large, and no private
individual, without receiving some special injury, could have
maintained an action; that the respondent found the capital,
and carried on the business which caused the nuisance, and it
was carried on for his benefit; that the respondent could not
say that, because he had given directions so to carry on the busi-
ness as not to allow the refuse from the works to fall into the
river, he was not liable on the indictment for a nuisance caused
by the acts of his servants; that he must have given to his ser-
vants or agents all the authority that was incident to the carrying
on of the business; and that it was necessary to prove only that
the nuisance was caused in the carrying on of the works of the
quarry.   In this opinion Judge Shee concurred.   Judge Black-
burn said it was only necessary to say, that where a person
maintains works by his capital, and employs servants, and so
carries on the works as in fact to cause a nuisance to a private
right, for which an action would lie, if the same nuisance inflicts
an injury upon the public right the remedy for which would be
by indictment, the evidence which would maintain the action
would also support the indictment.   This was not regarded
as any infringement upon the general rule that a master is not
criminally answerable for the act of his agent.   The rule was
discharged.   In *Brown* v. *Foot*, 66 L. T. (N. S.) 649, the appellant,
a seller of milk, was convicted in the court below for violating
a statute creating a penalty for the sale of adulterated milk
to a purchaser to his prejudice.   The milk sold was adulterated
without the cognizance of the master, by his servant, employed
in the general business of selling milk for the master.   Affirming
the conviction, it was said by Judge Wills that the master was
bound not only not to sell an adulterated article himself, but
to take care that other people do not sell it for him; that if he
does not take that care, he breaks the Act of Parliament; that
as the servant was acting within his orders in selling, what he
did wrongly in the scope of his employment was a matter for
which the master was liable, because it was his business to see
that within the scope of the delegated authority the servant
carried out the Act of Parliament just as much as he did himself.
To the same effect are *Rex* v. *Medley*, 6 C. & P. 292, 25 E. C. L.

439, and Parker *v.* Allen, (1899) 1 Q. B. D. 20. In *State* v. *Gilmore*, 80 Vt. 514, 68 Atl. 658, 16 L. R. A. (N. S.) 786, the statute prohibiting a licensee from selling or furnishing intoxicating liquor to a minor for his own use or for the use of any other person was involved. The servant of the respondent, a first class licensee, contrary to his principal's instructions not to sell to minors, sold intoxicating liquor to a minor, taking pay therefor. The liquor sold was taken from the respondent's stock of liquors kept by him for sale under his license. It was held that the respondent could not delegate the conduct of the business to an agent with instruction not to sell to minors and himself escape liability if the agent violates the law in this regard; that the offence was complete when such sale was made under and by virtue of the license and in the line of the respondent's business as licensee, and it was immaterial whether the act was done by the licensee himself or by his servant; that when he engaged in the business he assumed all the risk of his employees violating the conditions of his license; and their acts were his acts when done in carrying on the licensed business.

Under these authorities the question of intention is immaterial. The statute looks at and punishes the act constituting the offence without regard to the intention of the person by or for whom the distribution was made. A person may lawfully distribute such articles as are named in the statute if he observes its provisions. If he employs an agent for that purpose, it is his duty to know that the law regulating the manner of distribution be not violated, and in case of its violation by such agent in the performance of the duties of his agency the principal is not absolved from responsibility by showing that in the manner of the work the violative acts were contrary to his previous general instructions. It follows that, notwithstanding the distribution alleged was in fact by the respondent's agent and contrary to his general instruction against delivering to children, yet as it was done by the agent in distributing samples furnished him by the respondent for that purpose, acting under the respondent's orders, and in the prosecution of the respondent's business for which he was employed, the distribution was caused by the respondent within the meaning of the statute, and he is answerable therefor.

*Judgment that there is no error in the proceedings, and that the respondent take nothing by his exceptions. Let execution be done.*