Common Pleas Court of Hamilton County.

ABE DENNIS V. STATE OF OHIO.

Decided April 23, 1931.

*Benjamin S. Schwartz,* for plaintiff in error.

*Harry J. Wernke,* city prosecutor, for defendants in error.

DARBY, J.

The parties will be referred to as they stood on the record in the Municipal Court.

The defendant was charged by affidavit with the violation of Section 6370, General Code, which so far as applicable to the case provides as follows:

"A person purchasing, selling, exchanging or receiving second hand articles of any kind, scrap iron, old metal, canvas, rope, branded bottles, junk or lead pipe, except plow irons, old stoves and furniture, shall * * * keep a separate book, open to inspection by a member of the police force, city marshal, constable or other person, in which shall be written in the English language, at the time of the purchase or exchange of such articles, a description thereof, the name, description and residence of the person from whom purchased and received, and the day and hour when such purchase or exchange was made. Every entry shall be numbered consecutively, commencing with · the number one."

The affidavit first described the defendant as a person purchasing second hand articles, and then charged that he "did unlawfully and knowingly fail to write in a certain book, in the English language, the name, description and residence of a certain person, to-wit, John Doe, the said person, to-wit, John Doe, being then and there the person from whom certain articles, to-wit, railroad tie plates were then and there purchased and received by said Abe Dennis."

The record fails to disclose any objection to the affidavit, and upon arraignment the defendant pleaded not guilty. The defendant was tried, convicted and sentenced. On the motion for new trial for the first time the sufficiency of the affidavit was challenged. (See motion for new trial:

"6. That the charge herein is insufficient to constitute an offense against the laws of the state of Ohio.

"7. That there is no offense charged against the defendant.")

On argument in this court the point was made that the affidavit failed to allege that the railroad tie plates so purchased were second hand articles. Section 13433-2, General Code, gives authority to the Municipal Court to amend the warrant or information to conform to the facts and the evidence. The tie plates referred to were before the Municipal Court. The evidence was that they were stolen from a corporation, not a railroad. There was therefore sufficient evidence before the court to find that the articles were second hand.

Section 13449-5, General Code, provides:

"No motion for new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court in case of any inaccuracy or imperfection in the indictment, information or warrant, provided that the charge be sufficient to fairly and reasonably inform the accused of the nature and cause of the accusation against him * * * nor for any other cause whatsoever, unless it shall affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial."

The defendant chose to take his chance of an acquittal by not objecting to the affidavit, and with the affidavit in the form it is, and the evidence before the court, it is now too late for the defendant to complain. (See also Section 13432-17, General Code.)

The defendant also claims that there was no evidence of a sale of the tie plates. The record shows that the defendant was engaged in the second hand business; that he maintained the place described in the evidence as his place of conducting such business; that he had clerks and other

employees there to conduct the business in his absence; that he kept what he claimed to be a book such as required by the statute, and also another book for the purpose of other records. The evidence further shows that the tie plates referred to were stolen and carried in a wheelbarrow by the thief directly to the place of business of the defendant; that the employee of the defendant was present, and that the plates were offered to him for sale. The police officers went to defendant's place of business very shortly after the plates were taken there by the thief, and inquired of the employee as to whether he had bought them, and were told he did not know. The plates in a sack, were found inside the premises of the defendant. At the time they were found, though very shortly after they were taken to defendant's place, they were secreted under a lot of other iron, and found there by the representative of the owner, the witness stating that six inches of old scrap iron was on top of the sack containing the plates.

On the trial defendant's employees stated they did not buy the stuff, but when it was brought there by the thief they ordered him to take it away, which they claim was done; however, almost immediately afterwards the iron was found on defendant's premises, secreted as stated.

The court is of the opinion that there was sufficient evidence to justify the Municipal Court in finding that the plates had been purchased as charged.

The evidence showed that the defendant was not present at the place of business at the time of the purchase of the tie plates. The place of business was in the charge of one Lerner. Lerner testified that he was in charge of the business all of the day in question, and was asked concerning the keeping of the book claimed to be the book required by the section of the Code referred to. It was shown from this book that there was no record of any purchase by the defendant on that day, and this witness was asked about having bought any other material that day, and recited that he had bought iron, and that he had bought some the day before, but this book does not show any entry of any iron purchased at or about that time.

It is claimed that this was error in allowing the proof of purchase at other times.

Section 13444-19, General Code, provides:

"In any criminal case, where the defendant's motive, intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing an act is material, any like act or other acts of the defendant which may tend to show his motive, intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question may be proved, whether they are contemporaneous with, or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another or subsequent crime by the defendant."

On the testimony it seems that there was a system by which the defendant purchased material and did not record it in his book. He and his clerk both testified to this, and all that this evidence did was to make clear the existence of such a system, and to show that there was no mistake or accident on his part at this time.

Prior to the adoption of the foregoing section of the Code, proof of other acts tending to show such system or plan was admissible. See *Whiteman* v. *State,* 119 O. S., 285, and many Ohio cases therein cited.

The defendant was cross-examined as to whether he had been previously convicted of a violation of this same section of the statutes. Objection was made, and he answered the question that he had been once arrested and convicted on this charge. The cross-examination was proper on the authority of *Harper* v. *State,* 106 O. S., 481, which holds that the defendant in a criminal prosecution may be cross-examined as to his conviction of crime under state or federal laws.

The most serious complaint made by the defendant is that he was convicted of a violation of the section when it appeared and was admitted that he 'was not present and had nothing to do with the alleged violation of the law. In other words, the claim of defendant is that he cannot be convicted of a crime which was committed by his agent and employe.

It would be freely conceded that guilt of crime is per-

sonal, and that one person may not be convicted because another person commits a crime. If this were a prosecution as an aider and abettor against the agent for participating in the crime, there would seem to be no question as to his guilt. The question arises as to whether the defendant Dennis can be held liable for the act of his agent in purchasing this material and in failing to make the record in the book.

This case may be clearly distinguished from other cases in which the principal would not be liable criminally for the act of his agent. In *Morse* v. *State,* 6 Conn., 9, the servant of the defendant, without the knowledge or consent of the defendant, and against his express directions, unlawfully extended credit to certain students at college. It was held that the defendant was not responsible for the act of the servant done not only without knowledge, but in disobedience to orders.

In *State* v. *Bacon,* 40 Vt., 456, which was a prosecution for obstructing sidewalks, it was held:

"The respondent, a coal dealer, sent R, his employe twenty-one years old and long used to teaming, to deliver coal to a customer. R, for convenience of unloading, drove onto the sidewalk without the knowledge or consent of the respondent. *Held,* that the respondent was not criminally liable for the act of his agent in so obstructing the walk."

The agent committing the wrong solely for his own convenience, and not under the direction or authority of his employer, it was held that it was not the act of the employer.

Many other authorities might be cited in line with the two preceding ones, which, however, are clearly distinguishable from the case in hand.

In *Queen* v. *Stephens,* L. R., Q. B. 1, 702, it was held:

"The owner of works carried on for his profit by his agent, is liable to be indicted for a public nuisance caused by acts of his workmen in carrying on the works, though done by them without his knowledge and contrary to his general orders."

In the opinion by Blackburn, J., p. 710, is the following:

"All that is necessary to say is this, that where a person maintains works by his capital, and employs servants, and so carries on the works as in fact to cause a nuisance to a private right, for which an action will lie, if the same nuisance inflicts an injury upon a public right the remedy for which would be by indictment, the evidence which would maintain the action would also support the indictment."

The last case quoted gives the general principle applicable in such cases.

Where one conducts a business such as that of the defendant in this case, and absents himself from the place of business, leaving the control and operation of the same in the hands of his servants or agents, he is liable for their acts or failure to act under the statute.

In *Attorney General* v. *Siddon*, 1 C. & J., 220, it is laid down:

"Where a trader harbors and conceals smuggled goods he is liable in penalties for the illegal act of the servant done in the conduct of the business, with a view to protect the smuggled goods, though the master be absent at the time, and the act be done by the servant upon the exigency of the occasion when the goods are discovered."

In the opinion by Alexander, L. C. B., p. 225 is the following:

"The provisions of the legislature would be inefficacious if the master for whose benefit the operation is intended were to escape these penalties, which the legislature has imposed, where the act was done in pursuance of the general purpose which the servant was undoubtedly authorized by the master to carry into effect. It is evident that all those provisions would, but for this construction, be unavailing."

In *Rex* v. *Walter*, 3 Esp., 21, a principle is stated which is to be found in a number of cases immediately hereafter cited, to-wit:

"The proprietor of a newspaper is answerable criminally as well as civilly for misconduct in the conducting of the business as ex. gr. for the publication of a libel though he has nothing to do with the publication, and the whole is conducted by his servants."

To the same effect see *Commonwealth* v. *Morgan*, 107 Mass., 199; *People* v. *Fuller*, 238 Ill., 116; *Rex* v. *Gutch*, *Moody & M.*, 433.

(The citation of cases of this character as to libel could be indefinitely extended.)

*State* v. *Cray*, 85 Vt., 99 was a prosecution for distributing or causing to be distributed samples of medicine by leaving them exposed so that children might become possessed thereof. It was held:

"a master is liable for the acts of his servant in distributing a free sample of medicine by handing it to a child four years old, though the servant acts in violation of expressed general instructions of the master for the question of his intent is immaterial."

In *Prather* v. *United States*, 9 App. Cas., D. C., 82, it is held:

"In the trial of such an indictment (relating to the sale of oleomargarine) it is sufficient for the Government to show that the article was sold in defendant's place of business, in the usual and ordinary course of business, whether it was sold by himself personally or by a clerk or employe." (See p. 94.)

To the same effect see *Groff* v. *State*, 177 Ind., 547; *Commonwealth* v. *Warren*, 160 Mass., 533; *Hunter* v. *State*, 1 Head (Tenn.), 160.

The foregoing cases but illustrate the rule that one is responsible for the unlawful acts of his agent when he entrusts the agent with the performance of his business.

The State of Ohio is not without some authority on this subject. In *Miller* v. *State*, 22 N. P., (N. S.), 106, which was a prosecution for selling adulterated food, it was held:

"Where the evidence shows such sale was made by an employe authorized to make sales, the principal is guilty, and it is not necessary for the affidavit to state the sale was made by an agent or employe."

In that case reference is made to *Williams* v. *State*, 25 Ohio Circuits (Lanning 1904), 673, where it was laid down by the Sixth Circuit:

"1. Where an affidavit charges one with unlawfully selling oleomargarine, and the evidence shows that the sale was made by an employe, who was authorized to sell the article, this is not a variance. It is not necessary to allege that the sale was made by an agent or employe. In misdemeanor all are principles.

"3. One who engages in the business of selling oleomargarine to the public, and permits and authorizes its sale by his clerks or employes, is bound to see that the law regulating its sale is complied with, and if it is violated by such employes or clerks, the employer is liable under the statute."

In *Wood* v. *State*, 20 Ohio Circuits (Lanning 1909), 255, it is held:

"The owner of mules being driven by his agent, without his having any personal knowledge of the condition of such mules, is nevertheless responsible for acts of cruelty committed by such agent upon such animal in the course of his employment, and with the apparent authority of the principal."

*Meyer* v. *State*, and *Bissman* v. *State*, 54 O. S., 242, involve prosecutions for the sale of aduterated wine. In the course of a per curiam the Court say:

"The agent is within the terms of the statute because he personally participated in its violation; and the principal is responsible for what he does by another. Any other construction of the statute would afford an easy method for defeating this purpose and it would extend to those who are likely to know of the adulteration of the article, sole immunity from the penalty which is imposed upon others who have no such knowledge."

The Court is clearly of the opinion upon the authorities above set forth, and a multitude of others, and also upon general principles, that when the defendant left his business in the hands of his employes to be conducted by them in his absence, he is responsible for their acts, and their failure to act in accordance with the statute; the Court is also of the opinion that there was sufficient evidence to justify the Municipal Court in finding that there was a sale of the railroad tie plates described in the affidavit, and that the denial by the employe that he had not bought the goods is disproved by the surrounding circumstances; the

Court is also of the opinion that the Municipal Court was justified in finding that there was a scheme or plan to buy goods in just the manner in which these were bought, and to withhold the purchases from the book.

Some criticism of the Court below has been made because that Court dismissed the defendant on the charge of receiving stolen goods. That action however of the Court may be sustained upon consideration of the fact that only in case the goods were shown to have been stolen, and knowingly received by the defendant as stolen goods, could he be convicted, so that there is no inconsistency in holding that he was not guilty of receiving stolen goods, and at the same time holding that he had bought goods which he had failed to properly record.

*Judgment affirmed.*

Common Pleas Court of Montgomery County.

MIAMI SAVINGS & LOAN ASSOCIATION V. ARNOLD BROS.-WEISS, INC., ET AL.

Decided February 26, 1931.

*Sigler & Denlinger* and *Burkhart, Heald & Pickrel,* for plaintiff.

*O. J. Meyers,* for The Gebhart-Wuichet Lumber Co.

SNEDIKER, J.

The Gebhart-Wuichet Lumber Company is a defendant herein and in its cross-petition, for a first cause of action, recites that there is due and owing it from the de-