STATE of North Dakota, Respondent,

v.

Herbert C. JOHNSON, Defendant and Appellant.

Cr. 281.

Supreme Court of North Dakota.

Feb. 26, 1958.

Cupler, Tenneson & Serkland, Fargo, for appellant.

Leslie R. Burgum, Atty. Gen., Lyle Huseby, State's Atty., Fargo, for respondent.

JOHNSON, Judge.

The defendant, Herbert C. Johnson, appeals his conviction for violating Section 53–0210 NDRC 1943, under which he was found guilty, as the owner and proprietor of Johnson's Barn, a public dancing place, for admitting to a dance on December 28, 1956, boys and girls between the ages of 14 and 17, unaccompanied by parent or guardian.

The defendant made a motion for a new trial. The motion was denied. He appeals from the judgment of conviction and the order denying his motion for a new trial. He bases his appeal on 29 alleged errors of law and also asserts that the evidence is insufficient to convict the defendant in that he did not admit the minors; that they were accompanied by guardians within the meaning of the statute. It is unnecessary to detail the contents of the alleged errors, as the determination of two principal questions involved in this action will dispose of most of them. Errors 1, 2, 12 and 13 have been abandoned and are not argued on this appeal.

The two fundamental questions for decision involve whether or not under the statute in question the defendant is liable criminally for the acts of his employees, and whether or not the minors who attended the dance on the night in question were accompanied by a guardian within the meaning of the statute. Error 25 relates to the instructions of the court upon evidence received without objection as to the good character and reputation of the defendant. Errors 28 and 29 are predicated upon the refusal of the court to dismiss the state's case at the close of its presentation of evidence, and at the close of the trial.

Section 53–0210 NDRC 1943, under which the defendant was convicted, provides:

"Admission of Minor to Public Dance Prohibited. No proprietor, lessee, manager, nor employee of any proprietor, lessee, or manager of any hall, room, pavilion, bowery, platform, or other structure in or to which the public generally is invited to participate by paying an admission fee in money or

other token of value shall admit, while dancing is practiced in or at such place, any person under the age of eighteen years unless such person is accompanied by a parent or guardian."

The evidence is undisputed that the defendant, Herbert C. Johnson, did not personally admit any of the minors mentioned to his dance on December 28, 1956. They were admitted by some of his employees, unknown to the state. It is also undisputed that the defendant was personally present at his public dancing place on the night in question; that he saw several of the minors involved that evening, talked to some of them, and knew that they were there. It is further undisputed that neither he nor the employees that admitted these minors inquired as to their ages. The defendant admits by direct implication all the essential facts involved in this case.

The first primary question involved in this case is, whether or not, criminal or penal responsibility attaches to the proprietor and owner of a dancing place for the acts of his employees.

It has been determined in many cases that an employer is criminally liable for unlawful sales of intoxicating liquor made by his clerk or employee in the ordinary line of his duty as such. 30 Am.Jur., Intoxicating Liquors, Section 302, page 415. And according to many other authorities a liquor dealer is criminally liable for unlawful sales by his bartender within the scope of his employment even when made in violation of express directions. The theory of the cases so holding is that the statute places the responsibility of preventing illegal sales upon the licensee. 30 Am.Jur., Intoxicating Liquors, Section 304, page 416. For cases showing the application of these rules see 139 A.L.R., Liquor —Illegal Sale by Employee, pages 313-316.

The question with which we are confronted is whether the rule mentioned is applicable to the facts involved in the case at bar. The trial court so applied it and instructed the jury as follows:

"I think I should advise you, too, that the defendant Herbert Johnson did not personally admit the patrons to this dance; that since he was the owner and proprietor of the place, he is charged with responsibility for the violation of the law, if any, in connection with running the dances at Johnson's Barn even though some of his employees, or helpers, were the ones who actually sold the tickets and admitted patrons to the dance floor, if you find that the defendant was present to supervise the dance."

Under the statute here in question there is no indication that intent is a necessary element of the offense. It is strenuously asserted that since the statute covers not only the proprietor, but also his employees as well as the employees of a lessee of a public dancing place, the legislature could not have intended that the owner or proprietor of a public dancing place be criminally responsible for the acts of his employees. We believe that the defendant cannot escape guilt by attempting to shift the crime on his employees.

The appellant attempts to distinguish the facts involved in the case at bar with situations in which a defendant has been found guilty of illegal sales of intoxicating liquors made by his employees to minors. He does so on the theory that the statutes dealing with the liquor business and the unwholesome or evil influences that surround and stem therefrom are different from those surrounding or associated with the public dancing places, that therefore, the rule as to illegal sales of liquor to minors, is not applicable.

The evidence shows that Johnson's Barn was properly operated and well managed when public dances were held therein; that it was clean, well lighted, and the yard and surroundings policed. In spite of that the evidence shows that some fights had taken place at Johnson's Barn; that at times persons had been found at dances carrying a bottle of intoxicating liquor.

Public dances and dancing are closely regulated by this state under its police powers, in apparent recognition of the fact that while public dances and dancing at public dancing places may not be harmful in themselves, there are surrounding such dances or associated with them, possible injurious, unwholesome, influences, and that the object to be sought in regulating these dances is the elimination, or at least a minimization of such influences insofar as possible. Chapter 53–02 NDRC 1943.

The conduct of public dances is only allowed under permit from the governing body of the municipality or organized township and from the county commissioners in unorganized territory. Section 53–0205 NDRC 1943. The governing body has discretion in refusing or granting permits and shall make inquiry and investigation as to the propriety of granting or refusing a permit. Section 53–0206 NDRC 1943. The permit to conduct a public dancing place may not issue for more than one year and is not transferable. Section 53–0203 NDRC 1943. It is apparent from this last section that the issuance of the permit is to be based upon the personal character, integrity and the general reputation of the party to whom it is issued. No person having a permit to hold a public dance or to conduct a public dancing place shall permit at any public dance, or in the vicinity of any public dancing place, an intoxicated person, a prostitute or person of known immorality, or any indecent or immodest dancing. Further it is required that every public dancing place shall be brightly illuminated while in use, and dancing therein while the lights are extinguished, dimmed or turned low is prohibited. Section 53–0207 NDRC 1943. It is the duty of the person conducting a public dance to have in attendance, and to pay the expenses thereof, a deputy sheriff or special officer required for proper policing of such dance, and no dance shall be permitted to proceed until such officer is present and his fees are paid. The statute also requires that the holding of a public dance without giving notice to the sheriff

of the county, or the peace officer of the city or village and without making provision for policing thereof is a misdemeanor. Section 53–0208 NDRC 1943.

A copy of Section 53–0210 NDRC 1943, the section under which this prosecution was instituted, shall be posted in a conspicuous place at the entrance of every public dancing place. Section 53–0211 NDRC 1943.

No owner, occupant, person, club, group, copartnership, or corporation shall hold or permit any dance or dancing in or on any premises, or on premises adjacent to but connected, by door, stairs, or other entrance, with a place or premises where intoxicating liquors are sold as a beverage. Section 53–0212 NDRC 1943. The failure of any state's attorney, sheriff, deputy sheriff, chief of police, or other police officer to enforce the provisions of Section 53–0212 NDRC 1943, shall constitute sufficient grounds for the removal of such officer from office. Section 53–0213 NDRC 1943.

■ In addition to these regulatory statutes, the dance hall proprietor must obtain a license from the attorney general. Chapter 53–06 NDRC 1943. Public dances are prohibited between the hours of 12 o'clock midnight on Saturday and sunrise the following Monday morning. Section 12–2119 NDRC 1943. All these regulatory statutes evidence a legislative intent to surround dances and public dancing with all the protection possible against such unwholesome, harmful, or bad influence as may possibly arise surrounding them or be associated with the conduct of a public dance. This legislative policy, we believe, makes applicable the same rule of law that has been applied to the illegal sale of intoxicating liquor to a minor by an employee, which makes the owner or proprietor of the liquor establishment responsible criminally for the acts of such employee.

In State v. Schull, 66 S.D. 102, 279 N.W. 241, 115 A.L.R. 1226, involving the crime of selling or giving a minor a pitcher of

non-intoxicating beer in violation of a statute, the trial court there instructed:

> " 'Under the statute you are instructed that the question of intent to violate the law is not in issue nor does the question of his good faith or bad faith nor whether he believed Harry Schnackenberg to be eighteen years old or not have anything to do with this case. * * *' "

In discussing the case, the South Dakota court, 279 N.W. at page 242 said:

> "It will be observed that the statute does not require that the offense shall be knowingly committed. In State v. Dorman, 9 S.D. 528, 70 N.W. 848, 849, this court dealt with a similar question and quoted from Wharton on Criminal Law, and we quote: 'But we cannot agree with counsel in their contention that the provision applies to a case like the one before us. Mr. Wharton, in his work on Criminal Law (volume 1, § 88), lays down the general rule as follows: "When a statute makes an act indictable, irrespective of guilty knowledge, then ignorance of fact, no matter how sincere, is no defense." ' "

In State v. Schull, supra, the court refers to United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 302, 66 L.Ed. 604, in which the court said:

> " 'In the prohibition or punishment of particular acts, the state may in the maintenance of a public policy provide "that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance." Many instances of this are to be found in regulatory measures in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of mala in se'."

■ The responsibility of not admitting minors under 18 unaccompanied by parent or guardian to a public dance has been placed squarely upon the permit holder and licensee, and in obtaining the permit and license the duty is thrust upon him to see that the law is obeyed. Since he is the beneficiary of the permission and license to conduct a public dancing place, he also assumes all of the duties imposed by the statute, among which is the duty to prevent persons under 18 years of age from being admitted to a public dance unless accompanied by parent or guardian.

While most of the cases imposing criminal liability upon an owner for the acts of his agents, servants, employees or helpers have been involved in the sale of intoxicating liquors, some others have been found involving other illegal acts. In State v. Gray, 85 Vt. 99, 81 A. 450, 452, 36 L.R.A., N.S., 630, it was held that under a statute imposing a fine upon one who distributes, or causes to be distributed, free or trial samples of medicine in such a manner that children may become possessed of them, a person is liable to a fine in case his servant or employee distributing such packages delivers one to a child, although it was done against the express orders of the employer. This case relies to some extent for its reasoning upon English cases involving similar situations. The court in this case says:

> "The statute looks at and punishes the act constituting the offense, without regard to the intention of the person by or for whom the distribution was made. A person may lawfully distribute such articles as are named in the statute, if he observes its provisions. If he employs an agent for that purpose, it is his duty to know that the law regulating the manner of distribution be not violated, and in case of its violation by such agent in the performance of the duties of his agency the principal is not absolved from responsibility by showing that in the manner of the work the violative acts were contrary to his previous general instructions."

One of the cases mentioned in the above case dealt with a situation in which the owner of a quarry was found guilty for the acts of his workmen in allowing quantities of rubbish to be cast or thrown into a river. Another case was one in which a servant sold adulterated milk without his master's knowledge. Still another similar or analogous situation was involved in the case of Overland Cotton Mill Co. v. People, 32 Colo. 263, 75 P. 924, in which it was held that where the evidence shows that an assistant superintendent of a mill had authority to hire and discharge an employee, when a child under 14 years of age was employed by the company and the assistant superintendent should have known thereof or by reasonable diligence could have known, such employment was a sufficient basis to sustain a conviction for violating a statute limiting the employment of a person under 14 years of age. This case was discussed in the subsequent case of Blackett v. People, 98 Colo. 7, 52 P.2d 389, 394, and in the concurring opinion thereof, the judges concurring said:

"A distinction exists between acts that are malum prohibitum, e. g., the violation of statutes prohibiting employment of children in mills and the violations of statutes forbidding the sale of intoxicating liquors without a license or at certain times, and acts that are malum per se, e. g., murder, larceny and embezzlement. A less exacting rule concerning guilty knowledge and intent is sometimes applied in cases involving acts malum prohibitum than in cases involving acts malum per se."

 We conclude that in view of the public policy clearly expressed by our legislature in closely regulating public dances and dancing places, that the rules heretofore stated with reference to the illegal sale of intoxicating liquor to minors apply to the statute under which Herbert C. Johnson was convicted.

It is the position of the defendant that since the minors involved in the case at bar, who attended his dancing place on December 28, 1956, were either accompanied by persons over the age of 18, who were for the time being to be considered as their guardians, or that if they were not accompanied by a person over that age, they were properly admitted to the dance under an arrangement between Herbert C. Johnson and their parents whereby he, as proprietor and owner of Johnson's Barn, had agreed to look after and supervise these youngsters in the parents' absence, and that consequently there was full compliance within the meaning of the statute.

The evidence discloses that all of the minors involved were under 18 years of age. They all paid for a ticket except one. The boys ranged from 15 to 17 years of age, the girls from 14 to 17. None of the children were accompanied by a parent or guardian. One attended the dance with a boy who was 19 years of age. One girl came to the dance with a boy over 19 years of age. Two of the minors may have been admitted under the arrangement that the defendant had with their parents. Two girls came to the dance with Mrs. Lila Svare, a woman in her 40's, but they did not go home with her. Without her knowledge and consent the two girls left separately with a boy about 2 a. m.

The next question for our determination is what is the meaning of the word "guardian" as used in the statute under consideration?

The defendant cites the case of People v. Samwick, 127 App.Div. 209, 111 N.Y.S. 11, 12, which held that the phrase "unless accompanied by parent or guardian", as used in a statute making it a misdemeanor to admit or allow to remain in, any dance house, concert saloon, theatre, museum, skating rink, or in any place where wine or spirituous liquors or malt are sold or given away, or in any place of entertainment, injurious to the health or morals of a person under 16 years of age; that the word "guardian" did not mean a guardian appointed by a court. It further decided

that if children were taken to the theatre by a person other than one of their parents or legal guardians, by an older brother or sister, or neighbor or friend, he or she was the guardian for the time being within the meaning of the statute.

On the other hand, State v. Johnson, 23 S.D. 293, 121 N.W. 785, 787, 22 L.R.A., N.S., 1007, involving a violation of a South Dakota statute forbidding minors to "visit in" a saloon, unaccompanied by father, mother or guardian, held the defendant guilty for allowing Carl Stoltenburg, a boy 16, while a member of a certain band in charge of an adult, to visit in a saloon. The court said with reference to the meaning of the word guardian:

"We think there can be no question of what the Legislature meant by this word 'guardian,' and that they meant a person who occupies under the law that relation to the minor which the natural law creates between the parent and child, or which is created by some order of court, and that it did not mean that any person, who had minors under his care, was by virtue thereof vested with the right, or by the parent could be vested with the right, to take the children of this state into places held by our law to be injurious to the young of the state."

We believe that the better reasoning supports the view expressed by the South Dakota court. If the word "guardian" as contended by the defendant, means an escort, chaperone, or any adult neighbor or friend over the age of 18 years, or any person with whom the parents may have made some arrangement for supervision of a minor at a public dance, it was inappropriately used in the statute. The word "guardian" has a technical, legal meaning. In law it constitutes one who has, or is entitled to the care and management of the person or property, or both, of another, as of a minor or of a person incapable of managing his own

affairs. Black's Law Dictionary, 4th Ed., defines the word "guardian" as:

"A guardian is a person lawfully invested with the power, and charged with the duty, of taking care of the person and managing the property and rights of another person, who, for some peculiarity of status, or defect of age, understanding, or self-control, is considered incapable of administering his own affairs."

Under our statute even a parent does not have authority over the property of his child without appointment as guardian of such child's estate as provided by law. Section 30-1003 NDRC 1943.

It seems to be the supposition of the defendant that as to the children with whose parents he made arrangements for supervision at his dances, and as to the other minors who were present with persons over 18, that he and such adult persons were for the time being the guardians of the minors and stood in the place of parent or guardian, and that this was sufficient within the contemplated meaning of the statute. He further suggests that he and the adults who accompanied these minors were within the meaning of the phrase "in loco parentis". A person who stands "in loco parentis" is a person who stands in the place of a parent; charged, factitiously, with a parent's rights, duties and responsibilities. Black's Law Dictionary, 4th Ed., p. 896.

The cases relating to the application of the terms "in loco parentis" indicate that it does not refer to such a transitory arrangement as the defendant claims he had with some of the parents of the minors involved in this case. Nor does it refer to a temporary situation in which a minor is accompanied by someone over 18 to a public dance.

We conclude that none of the minors involved in this case were accompanied by a "guardian" such as is con-

templated by the use of that word in the statute here under consideration.

The two primary issues heretofore discussed dispose of all the alleged errors specified by the defendant, except the contention that it was error for the trial court to charge that the testimony introduced as to the good character and reputation of the defendant for truth and veracity were not issues in the trial and that the jury should not be influenced in any way by this character evidence except on the question of credibility, and also that it was error for the court to deny the defendant's motion for dismissal of the case at the close of the evidence for the prosecution and at the close of the trial.

The defendant requested that the jury be instructed as follows:

"Testimony has been introduced in this trial through several witnesses with reference to the good reputation of Herbert C. Johnson, the defendant, and his reputation for truth and veracity. You are advised that evidence of good reputation is evidence in favor of the defendant possessing it. Such evidence is proper and competent and is to be considered by you with all the other evidence in the case. This is upon the theory that one who has established by his conduct in the community in which he resides a good reputation for truth and veracity is less liable to commit a misdemeanor than one who has not, by such conduct, established such reputation."

A similar instruction was approved by this court in State v. Tucker, 58 N.D. 82, 224 N.W. 878, a murder trial.

The court refused to give the requested instruction. It instructed the jury as follows:

"Evidence has been introduced here as to the good character of the defendant and his reputation in the community where he lives. I would say that that is generally admitted by everybody concerned. I would caution you, however, that Herbert Johnson's character and reputation are not issues in the trial of this case, and the Jury should not be influenced in any way by this character evidence except on the question of credibility."

It is to be noted that in this charge the jury was advised, as the evidence had indicated, that it was generally admitted by everybody concerned that the defendant was possessed of a good character and a good reputation in the community in which he lived. The crime for which the defendant was convicted does not involve any moral turpitude, guilty knowledge or criminal intent. Volume 1, Wharton's Criminal Law, 12th Ed., Section 398, pages 567–572, states:

"A man's good character is his most valuable asset; and when accused of crime, he is entitled to put known reputation for good character in relation to the trait of character involved in the crime charged, for the purpose of showing, or assisting to show, any of the following matters and things: (1) To disprove the commission of the offense; (2) to rebut the evidence of presumption of criminal intent; (3) to show the probability of mistake or falsehood on the part of the witnesses for the prosecution; (4) for the purpose of raising a doubt as to guilt, when considered in connection with other evidence, where such doubt would not otherwise exist; and (5) for the purpose of mitigating punishment, when the punishment is to be fixed by the trial jury."

None of the elements referred to by Wharton, as a basis for introduction of evidence of good character or reputation for truth and veracity, are present in this case. The essential facts were admitted by the defendant. His good character and reputation did not tend to disprove the commission of the offense, nor to show the probability of a mistake or falsehood

on the part of the witnesses for the prosecution. Their testimony is undisputed as to all essential matters. Nor would the evidence rebut the presumption of criminal intent. This offense is one which does not involve criminal intent. Neither can it be said that the evidence of good character and reputation would raise a doubt as to guilt when considered in connection with other evidence where such doubt would otherwise exist. The criminal liability or guilt of the defendant was never in doubt on the basis of the facts. His guilt depends upon the application and construction of the statute under which he was arrested. Nor was the evidence admissible for the purpose of mitigating punishment as the punishment for this offense is fixed by law and is not to be fixed by the jury. If the evidence had been properly objected to in this particular case, it was not admissible. As we view the record, the defendant has had the benefit of the reception of evidence that the jury was not entitled to consider.

"Where the doing of the act charged *is not in dispute,* because conceded, it has been said that character no longer has any probative function, and should not be received, since it certainly cannot be set up merely in excuse." Wigmore on Evidence, 3rd Ed., Section 56(3), page 453.

 The reception of evidence as to the good character and reputation of the defendant and instructions thereon which had no bearing upon his guilt or innocence, cannot be a basis for error. The reception of the evidence and its consideration by the jury was beneficial, rather than harmful, to the defendant.

 The defendant was not entitled to have his motion for dismissal granted either at the close of the state's case or at the close of the trial. Section 29-2137 NDRC 1943; State v. Wright, 20 N.D. 216, 126 N.W. 1023. In that case it was held that error cannot be predicated upon the refusal of the court at the close of the state's case to advise an acquittal, as the jury is not bound by such advice, and the court cannot upon such application say, as a matter of law, that the evidence is insufficient to support the conviction, nor prevent a jury from giving a verdict. State v. Albertson, 20 N.D. 512, 128 N.W. 1122; State v. Farrier, 61 N.D. 694, 240 N.W. 872; State v. Grams, 65 N.D. 400, 259 N.W. 86. Our discussion of the issues involved disposes of all the alleged errors. Finding no reversible error in the record, the conviction stands and the judgement is affirmed.

GRIMSON, C. J., and SATHRE and MORRIS, JJ., concur.

BURKE, Judge (concurring specially).

I concur in the affirmance of the judgment. However, I consider it unnecessary to a decision in this case to hold that Section 53-0210 NDRC 1943, imposes a criminal liability upon the proprietor of a dance hall for the violation of the provisions of the statute by his employees and I express no opinion as to the correctness of this holding.

The evidence is undisputed that the defendant personally participated in the crime charged and no theory of vicarious guilt is necessary to sustain his conviction. It was established that defendant made an arrangement with the parents of two of the minors named in the information that they would be admitted to the public dances at his dance hall without being attended either by a parent or legal guardian, in violation of Section 53-0210, supra. It was also established that subsequent to this agreement the minors were so admitted. As I view it, this evidence is clearly sufficient to sustain a finding of personal guilt on the part of the defendant.