2003 VT 19

## Clyde E. and Vivian WHARTON v. TRI-STATE DRILLING & BORING

[824 A.2d 531]

No. 01-520

¶ 1. February 19, 2003. Appellant Tri-State Drilling & Boring admits to having mistakenly drilled a well on the property of appellees Clyde and Vivian Wharton and filed a fraudulent mechanics' lien against the Whartons' property in an effort to compel the Whartons to negotiate an easement. The trial court found Tri-State liable for abuse of process and awarded compensatory and punitive damages. Tri-State appeals the trial court's denial of Tri-State's motion to dismiss for failure to state a claim and award of actual and punitive damages to the Whartons. Although we find that Tri-State's actions in this case did not constitute abuse of process, we find that the Whartons proved the elements of slander of title and we affirm the trial court's award of compensatory and punitive damages on this basis.

¶ 2. The facts of this case are not disputed. The well had been commissioned by the Whartons' neighbors, the Beans. There was no suggestion, and the trial court found no evidence, that the Whartons were responsible for the mistake that led to the well being drilled on their property. Before the episode with the well began, the Whartons had decided to sell their property in Vermont and retire to Tennessee, and they had placed a "For Sale" sign at the end of their driveway. As the Tri-State drilling operators were finishing the well, Clyde Wharton returned home and realized the well had actually been dug on his property. A discussion ensued between Wharton and the drill-rig operator during which Wharton made it clear that he had no intention

of paying Tri-State for the well. Approximately one week after completion of the well, a Tri-State employee approached the Whartons asking them to grant an easement that would allow the well to be hooked up and used by the Beans. Tri-State offered to pay the Whartons for the easement, but the Whartons rejected the offer because they were concerned that encumbering their deed with an easement would impair their ability to sell their house.

¶ 3. On May 24, 1999, Tri-State sent a bill to both the Beans and the Whartons for $2,095, the cost of the well. On the same day, Tri-State filed a notice of mechanics' lien against the Whartons' property in the amount of $2,095 with the Concord town clerk. The president of Tri-State, Neil Faulkner, testified at trial that Tri-State never intended to bring suit against the Whartons to perfect the lien. He stated that the purpose of the lien was to obtain "leverage" in order to compel the Whartons to grant the easement that they had previously declined to give. The lien expired by law on August 24, 1999 without having been perfected by suit against the Whartons.

¶ 4. On September 10, 1999, the Whartons entered into an agreement to sell their camp to Patricia Branch for $64,000. Before the closing date on October 29, 1999, Branch's attorney, William Neylon, discovered the lien filed by Tri-State and advised Branch that the lien clouded title to the Whartons' property. Until Tri-State had formally released and discharged the lien, Neylon believed the title to have a constructive, if not actual, title defect. Neylon was unable to persuade any title insurance company to insure over the potential defect.

¶ 5. The Whartons' real estate agent had several conversations with Tri-State in an effort to convince Tri-State to discharge the lien and release its claim against the Whartons. Tri-State refused. The Whartons then hired a series of attorneys to assist in their effort to re-

solve the lien issue, again to no avail. The Branch sales agreement was extended to November 1999, but the sale ultimately fell through. The trial court found that the Whartons were unable to close the sale to Branch because of Tri-State's refusal to formally discharge the expired lien.

¶ 6. In anticipation of selling their home to Branch, the Whartons had packed and moved their belongings to Tennessee where they intended to retire. They stayed several additional months in Vermont during the fall of 1999 in an effort to salvage the sale of the property to Branch, incurring expenses, such as utility bills and pro rata real estate tax, that they would not have faced if the sale had closed as planned on October 29, 1999.

¶ 7. In January 2000, the Whartons reached a tentative agreement to sell the property to Bonnie McPhetres for $65,000. The sale was contingent upon the removal of the Tri-State lien. The Whartons filed this action demanding that Tri-State release and discharge its lien and underlying claim to enable this sale to take place. The parties agreed to escrow the amount of the Tri-State bill pending the resolution of this dispute. Tri-State then discharged the lien and the sale of the property to McPhetres closed.

¶ 8. In addition to injunctive and declaratory relief declaring Tri-State's lien void on its face and ordering Tri-State to discharge the lien, the Whartons sought actual and punitive damages and costs from Tri-State. The trial court found that actual damages the Whartons suffered included lost interest as a result of losing the initial sale to Branch, additional expenses incurred due to the Whartons' continued residence in Vermont after the sale to Branch would have gone through, expenses to travel back from Tennessee and stay in Vermont to complete the sale to McPhetres, and legal expenses to bring this suit. The trial court found that

the Whartons were entitled to compensatory damages of $4409.67, and also found that they were entitled under V.R.C.P. 54(a) to court costs of $186.08. Furthermore, the trial court found Tri-State's improper use of the mechanics' lien statute "reprehensible" and awarded the Whartons $10,000 in punitive damages. Thus, the total amount that the trial court ordered Tri-State to pay was $14,945.75 in actual damages, attorneys' fees, punitive damages, and costs.

## A. Motion to Dismiss

¶ 9. We first address Tri-State's claim that the trial court should have granted its motion pursuant to V.R.C.P. 12(b)(6) to dismiss for failure to state a claim upon which relief may be granted. Tri-State contends that the expiration of the mechanics' lien pursuant to 9 V.S.A. § 1924 rendered the mechanics' lien void on its face and therefore removed any cloud on title as a matter of law. Tri-State's motion to dismiss asserts that "it is beyond dispute that as a matter of law the lien could not have been the legitimate basis for the termination of the purchase and sales contract." According to Tri-State, at the time the Whartons filed their suit they had no cognizable legal complaint because the lien had expired. The Court is left to wonder, however, why Tri-State refused to discharge a lien that had no legal effect upon the marketability of title. Indeed, in a case involving a contractors' lien that had not been perfected during the three month statutory period, this Court observed that a recorded but unperfected lien *can* create a cloud upon title: "[A recorded lien], even without attachment, has a practical effect upon alienation, in that disclosure is required, 9 V.S.A. § 1922, and *a cloud upon title created.*" *Filter Equipment Co. v. I.B.M. Corp.*, 142 Vt. 499, 502, 458 A.2d 1091, 1093 (1983) (emphasis added).

¶ 10. When reviewing the disposition of a Rule 12(b)(6) motion to dismiss, this Court assumes that all factual allegations pleaded in the complaint are true. *Richards v. Town of Norwich*, 169 Vt. 44, 48-49, 726 A.2d 81, 85 (1999). We disregard all of defendant's contrary assertions. *Id.* Moreover, a motion to dismiss for failure to state a claim upon which relief may be granted should not be granted unless it is beyond doubt that there exist no facts or circumstances that would entitle the moving party to relief. *Id.* at 48, 726 A.2d at 85; *Amiot v. Ames*, 166 Vt. 288, 291, 693 A.2d 675, 677 (1997). By this standard, the trial court correctly denied Tri-State's motion to dismiss. Even though the mechanics' lien had expired, until it is discharged a mechanics' lien must be disclosed to potential purchasers. 9 V.S.A. § 1922. Assuming the Whartons' allegations that they had suffered actual damages from the cloud on title created by the Tri-State lien were true, they met their burden under V.R.C.P. 12(b)(6) of stating the grounds upon which they were entitled to relief. We therefore affirm the trial court's denial of Tri-State's motion to dismiss.

## B. Cause of Action

¶ 11. The trial court based its theory of recovery upon its finding that Tri-State committed the tort of abuse of process. In Vermont, a plaintiff alleging the tort of abuse of process is required to plead and prove: "1) an illegal, improper or unauthorized use of a court process; 2) an ulterior motive or an ulterior purpose; and 3) resulting damage to the plaintiff." *Jacobsen v. Garzo*, 149 Vt. 205, 208, 542 A.2d 265, 268 (1988). While the trial court's findings of fact support the second and third of these elements, filing a mechanics' lien does not require the use of any court process. We uphold the court's damage award, however, under the alternative theory mentioned by the trial court: slander of title.

¶ 12. A mechanics' lien expires by operation of law ninety days after its filing if not perfected by a court order. 9 V.S.A. § 1924. Tri-State never perfected its lien against the Whartons, and therefore no court order was involved. Merely filing, but not perfecting, a lien does not involve court process and therefore cannot be the basis for a claim of abuse of process in Vermont. See *Carl E. Jones Development, Inc. v. Wilson*, 255 S.E.2d 135, 136 (Ga. Ct. App. 1979) (unperfected mechanics' lien not basis for abuse of process claim); cf. *Kleinschmidt v. Morrow*, 642 A.2d 161, 164 n.3 (Me. 1994) ("assum[ing] without deciding" that the filing of a fraudulent lien constitutes an abuse of process where contractor who filed but never perfected fraudulent lien never challenged plaintiff's allegation that his conduct constituted an abuse of process); *Display Fixtures Co. v. R.L. Hatcher, Inc.*, 438 N.E.2d 26, 31 (Ind. Ct. App. 1982) (approving recovery for abuse of process claim based on filing but not perfecting a fraudulent mechanics' lien in state where use of "court process" not an element of the abuse of process tort).

¶ 13. Although the trial court erred in finding that Tri-State's actions constituted an abuse of process, we affirm because the Whartons are entitled to recovery for slander of title. We will affirm a judgment even if the grounds stated in its support are erroneous as long as the result is the same under the correct law and reasoning. *Vt. State Colleges Faculty Fed'n v. Vt. State Colleges*, 151 Vt. 457, 463, 561 A.2d 417, 421 (1989); see also *In re Handy*, 171 Vt. 336, 343, 764 A.2d 1226, 1234 (2000) (holding that Court will not reverse an erroneous trial court decision if record discloses any legal ground justifying the result).

¶ 14. The elements of slander of title as a cause of action have not been clearly laid out in Vermont. The tort has been recognized by this Court, however, first in a nineteenth century case in which we declared that we had jurisdiction over

claims for slander of title, *Sherman v. Champlain Transportation Co.*, 31 Vt. 162 (1858), and next in a more recent case where we held that an essential element of the cause of action for slander of title is special damages. *Gardner v. West-Col, Inc.*, 136 Vt. 381, 387, 392 A.2d 383, 386 (1978). The essence of the tort is the publication of an assertion that is derogatory to the plaintiff's title to property in an effort to prevent others from dealing with the plaintiff. See Prosser and Keeton on Torts § 128, at 967 (5th ed. 1984). To prove slander of title, a plaintiff must prove that a defendant falsely published a statement concerning plaintiff's title that caused special damages to the plaintiff and that defendant acted with malice. Restatement (Second) of Torts §§ 623A, 624 (1977); see also *Macia v. Microsoft Corp.*, 152 F. Supp. 2d 535, 541 (D. Vt. 2001); *Elm Street Builders, Inc. v. Enterprise Park Condominium Ass'n*, 778 A.2d 237, 245 (Conn. App. Ct. 2001); *Paidar v. Hughes*, 615 N.W.2d 276, 279-80 (Minn. 2000).

¶ 15. The Whartons established each of the elements of slander of title. Even though it had not been perfected within the statutory period, Tri-State's mechanics' lien was a falsely published assertion regarding title to the Whartons' home. See, e.g., *Kleinschmidt*, 642 A.2d at 164 (rejecting argument that because a mechanics' lien has not been perfected it cannot cause damages as a matter of law); *Filter Equipment Co.*, 142 Vt. at 502, 458 A.2d at 1093 (finding that a recorded lien even if unperfected "has a practical effect upon alienation"). The trial court found that the Whartons suffered pecuniary damages as a result of the lost sale to Branch because of the cloud on their title.

¶ 16. As for the final element of a claim for slander of title, malice, the trial court found malice as a necessary element for its award of punitive damages. The record supports this finding. Tri-State's behavior epitomized malice, which we have defined as "conduct manifesting personal ill will, evidencing insult or oppression, or showing a reckless or wanton disregard of plaintiff's rights." *Ainsworth v. Franklin County Cheese Corp.*, 156 Vt. 325, 332, 592 A.2d 871, 875 (1991). By Tri-State president Neil Faulkner's own admission, the mechanics' lien was filed only as "leverage," and was intended to force the Whartons into negotiating an easement which they previously declined to give. Tri-State argues that there is no malice because Tri-State made an honest mistake in locating the well and there was no evidence of any "bad blood" between Tri-State and the Whartons before the digging of the well. Tri-State's arguments miss the point of the Whartons' claims. Although the misplacement of the well was an honest mistake, Tri-State acted with malice *subsequent to* the drilling of the well when it filed a fraudulent mechanics' lien, an act that intentionally disregarded the Whartons' rights.

## C. Damages

¶ 17. Tri-State contends that the trial court erred in awarding compensatory and punitive damages. Parts of its arguments essentially repeat the same points made in its motion to dismiss, that is, that the Whartons could not as a matter of law have suffered damages from a mechanics' lien that had expired by operation of law. We have already rejected these arguments in Part A above. Tri-State does, however, raise two questions that deserve separate consideration. In this section we consider whether the Whartons met their obligation to mitigate damages and whether the trial court abused its discretion by awarding punitive damages in this case.

¶ 18. Tri-State does not dispute that the Whartons incurred pecuniary damages, but Tri-State alleges that it should not be held liable for these damages because the damages could have been

mitigated if the Whartons had agreed to escrow the $2000 in dispute out of proceeds from the initial sale, thus allowing the sale agreement with Branch to close. The burden of demonstrating that damages could have been mitigated falls on the party asserting it. *Cartin v. Continental Homes of N.H.*, 134 Vt. 362, 367, 360 A.2d 96, 100 (1976). The burden is not met by speculation, *id.*, and Tri-State cannot demonstrate that the sale would have taken place in October of 1999 if the lien had been discharged on the basis of this record. The record does disclose that the Whartons took steps to mitigate damages by having Tri-State notified that a formal discharge and release of the lien was necessary, and by continuing their efforts to sell their house after the initial sale agreement with Branch fell apart. The specific sale of property to Patricia Branch was impeded by Tri-State's refusal to discharge the mechanics' lien, and as courts have long recognized, "a specific lost sale is the best proof of special damages." *Maragos v. Union Oil Co. of Cal.*, 584 N.W.2d 850, 852 (N.D. 1998).

¶ 19. Finally, Tri-State argues that the court erred in awarding punitive damages, and that even if punitive damages were justified, the amount of punitive damages was excessive. This Court will not overrule a trial court finding regarding punitive damages unless it appears that the trial court had no reasonable basis for the exercise of its discretion. *Finley v. Williams*, 142 Vt. 153, 156, 453 A.2d 85, 87 (1982). In slander of title cases, punitive damages are awarded at the trial court's discretion. *Diapulse Corp. of America v. Birtcher Corp.*, 362 F.2d 736, 744 (2d Cir.), *cert. dismissed*, 385 U.S. 801 (1966); *Display Fixtures Co.*, 438 N.E.2d at 31. Here, we find that the award of punitive damages was well supported by the record. As the trial court noted, "the self-help nature of the lien law is utterly dependent on the good faith of those who utilize its provisions."

The mechanics' lien statute provides protection for those who contribute to construction projects by giving them a method for obtaining compensation for their products. *Newport Sand & Gravel Co. v. Miller Concrete Constr., Inc.*, 159 Vt. 66, 69, 614 A.2d 395, 397 (1992). Tri-State violated the trust inherent in this system when it used the lien statute in an effort to compel action from the Whartons, who owed Tri-State nothing. "The purpose of punitive damages is to 'punish conduct which is morally culpable ... [and] to deter a wrongdoer ... from repetitions of the same or similar actions.' " *Brueckner v. Norwich Univ.*, 169 Vt. 118, 129, 730 A.2d 1086, 1095 (1999). An award of punitive damages requires that a plaintiff show that defendant acted with malice. *Id.* As we have already noted, the trial court's finding of malice was supported from the evidence on this record. Even after the Whartons notified Tri-State about the effect of the outstanding mechanics' lien on their efforts to sell their home, Tri-State refused to discharge it. The trial court took into account Tri-State's financial circumstances in calibrating the amount of the punitive damages. Under the totality of the circumstances, the trial court's award of $10,000 in punitive damages was well within the court's discretion.

*Affirmed.*

Note. Justice Morse sat at oral argument but did not participate in this decision.