Sullivan v. Stear, No. 32-1-08 Wrcv (Eaton, J., Apr. 8, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT
## WINDSOR COUNTY, SS

| | | |
|---|---|---|
| ANN SULLIVAN | ) | |
| | ) | **Windsor Superior Court** |
| v. | ) | **Docket No. 32-1-08 Wrcv** |
| | ) | |
| JAMES STEAR and BETTY STEAR | ) | |

### DECISION RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Ann Sullivan seeks damages from defendants James Stear and Betty Stear based on claims for slander of title and tortious interference with her right of public travel. The case is currently scheduled for court trial next week. There are a number of pending motions, including cross-motions for summary judgment on the two main theories of relief.

The facts giving rise to the action are undisputed. The parties are neighboring landowners in a subdivision. Plaintiff bought her parcel in 1970 but never developed it. Defendants bought two parcels in 1985 and built a house on one parcel the following year. Both of defendants' parcels are accessible only by following the main road through the subdivision all the way to its end, and then turning right onto an extension of the main road. The extension is referred to herein as the "access road." Plaintiff's lot is on the corner, and it is bounded by the main road and the access road.

Defendants' 1985 deed supposedly gave them ownership of the access road, although there were some questions raised during the negotiations about whether other subdivision parcels had deeded rights to use the extension for access to their properties. It turns out that no private rights of way were ever deeded. Defendants ultimately recorded their deed and paid to have the access road top-dressed and made suitable for travel. Defendants thereafter maintained and plowed the access road between 1986 and 2009.

Plaintiff decided to list her parcel for sale in 2006. In connection with this, plaintiff hired some contractors and engineers to prepare the house site, design the septic system, etc. One of plaintiff's engineers provided an opinion that the only safe and viable access to the property was from the access road rather than from the main road through the subdivision. The reason involved steep grades along the main road.

Another of plaintiff's contractors went to the property in October 2006 to do some site clearing. He parked his truck on the access road. Mr. Stear came out and stated that the access road was private property. Words were exchanged. It was an unpleasant conversation.

Mr. Stear then told plaintiff's husband over a subsequent phone call that defendants owned the access road. Mr. Sullivan responded that it was his understanding that the road was public. Mr. Sullivan recalled that he had used the access road from time to time over the past thirty years to access his property and had never before been obstructed in his travels or otherwise seen any indication that the road was private. Mr. Stear reiterated that he had a deed to the access road.

Mr. Sullivan thereafter decided not to market the property. He felt that he would have to disclose to any prospective purchaser that defendants were claiming exclusive title to the only "safe and viable" access to the parcel. He did not think that the property would be saleable in this condition except at a prohibitive discount—at least until the status of the road was resolved.

Mrs. Sullivan (who is the title owner of the parcel) then filed the present lawsuit. She primarily sought a declaration that the access road was in fact part of the town highway. She also sought damages representing attorney's fees, diminished property value, and certain carrying costs associated with her inability to sell the property.

On plaintiff's claim that the access road was public, the court entered partial summary judgment in plaintiff's favor in August 2008. The court acknowledged that the access road was not listed on the town highway map and had not been treated as a road by the town highway commissioner, but noted that plaintiff's claim was based on a theory of dedication and acceptance, *Druke v. Town of Newfane*, 137 Vt. 571, 574 (1979), which focuses on whether the road was ever accepted by the town as public rather than whether the town thereafter maintained the road. The court found that the evidence of acceptance was "so strong" that plaintiff was entitled to summary judgment regardless of whether the town had ever actually maintained the road.

It should be noted that the town was not a party to the litigation, and thus the summary-judgment decision was reached without input from the town. Mr. Stear accordingly went to a selectboard meeting in November 2008 and asked for their opinion as to the status of "his road." The town responded by issuing a letter stating that the access road was not a public highway, and that the town had never maintained the road in the past (nor did it have any intention of doing so in the future). It was not until April 2009 that the town reversed its position and formally adopted the access road as a Class #4 town highway. The town later upgraded the access road to Class #3 status.

It is against this backdrop that plaintiff claims that defendants slandered her title and tortiously interfered with her right of public travel. In particular, plaintiff contends that defendants slandered her title by (1) recording the 1985 deed, (2) announcing in October 2006 that they had exclusive ownership of the access road, and (3) appearing at the town selectboard meeting in November 2008 and requesting a declaration as to the status of "their road." Plaintiff relies extensively on the summary-judgment decision as evidence that defendants acted recklessly in claiming title to the road.

2

Defendants contend that the evidence does not support plaintiff's claim for slander of title even when the evidence is viewed in the light most favorable to plaintiff. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The court accordingly reviews defendants' motion for summary judgment by viewing all of the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in favor of plaintiff. *Price v. Leland*, 149 Vt. 518, 521 (1988). The purpose of summary judgment is to "assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citation omitted).

The essential elements of slander of title require proof that defendants "falsely published a statement concerning plaintiff's title that caused special damages to plaintiff" and also that defendants "acted with malice." *Wharton v. Tri-State Drilling & Boring*, 2003 VT 19, ¶ 14, 175 Vt. 494. The function of the tort is to provide a remedy for "the publication of an assertion that is derogatory to the plaintiff's title in an effort to prevent others from dealing with the plaintiff." *Id*. Here, defendants contend that the record evidence does not support the conclusion that they acted with malice even when the evidence is viewed in the light most favorable to plaintiff.

The element of malice generally refers to conduct "manifesting personal ill will, evidencing insult or oppression, or showing a reckless or wanton disregard of plaintiff's rights." *Wharton*, 2003 VT 19, ¶ 16 (citation omitted); *DeYoung v. Ruggiero*, 2009 VT 9, ¶ 26, 185 Vt. 267. In the specific context of slander-of-title actions, the element of malice requires proof (at the very least) that defendant acted with a reckless disregard for the truth or falsity of the statement. Restatement (Second) of Torts §§ 623A–624. Something more than mere negligence is required. "The mere fact that a person asserts a claim to property that is unfounded does not warrant a presumption of malice, but a plaintiff must also show that the defendant could not honestly have believed in the existence of the right he or she claimed, or at least that he or she had no reasonable or probable cause of believing so." *Montecalvo v. Mandarelli*, 682 A.2d 918, 924 (R.I. 1996) (citation omitted).

Here, plaintiff relies heavily upon the summary-judgment decision as establishing that the evidence in her favor was "so strong" that defendants could not reasonably have believed their claim of ownership. But this position misconstrues the summary-judgment decision. As noted above, the court was not making a decision about whether the town maintained the road as public or whether it was reasonable to believe that the road was public. The decision was merely whether the town had ever accepted the road as public.

Indeed, plaintiff's evidence falls far short of demonstrating that defendants acted recklessly with respect to their claim of ownership to the access road. There is certainly no evidence showing that defendants knew their claim was false or that defendants were motivated by ill will. And the circumstantial evidence is limited to the inference to be drawn from the following facts, which have been asserted by plaintiff and which the court takes as true for purposes of this decision:

1.  Prior to closing in 1985, defendants received two letters from the real estate agent advising them that there might be private rights of way over the access road.

2.  Defendant's attorney knew that the 1985 deed would include language regarding those rights of way.

3.  Defendant had seen the developer's survey, which showed the access road to be part of the main road.

4.  The access road appeared to be indistinguishable from the main road.

5.  Defendant never asked the title attorney whether there were any rights of way over the access road.

6.  Defendant never told the title attorney that there might be a right of way over the access road.

7.  Defendant knew from the preliminary title certificate that the attorney was not providing an opinion about the access road.

8.  Defendant closed on the property without a title opinion on the access road.

9.  Defendant knew from the final title certificate that there was no opinion about the access road.

10.  Defendant never asked the title attorney why the certificate did not address the access road.

11.  Defendant identified the access road as a town road when he applied for a driveway permit.

12.  Defendant never placed any sign on the access road marking it as his road.

13.  The only sign defendant ever placed was at the juncture between the access road and his parcel.

14.  Defendant went to the selectboard in November 2008 and asked their views about the status of "his road."

15. After the town adopted the access road as a town highway, defendant requested that the town discontinue the road.

Immediately apparent is that most of the circumstantial evidence has nothing to do with the question of whether or not defendants knew or should have known that the access road was public. It rather relates to questions raised about whether there were any *private* rights-of-way over the access road. The only pieces of evidence that have any tendency to show defendants' awareness that the road was public are that (1) defendants saw a developer's survey that depicted the access road as an extension of the main road through the subdivision, (2) defendants applied for a driveway permit from the town in 1986, and (3) defendants put a gate at the line between their driveway and the access road.

Stacked against these slender reeds is considerable undisputed evidence that the public nature of the access road was not at all obvious between 1986 and 2008. The access road was not depicted on the town or state highway maps. It was not maintained or plowed as a town road. The town road commissioner testified that the road had never been treated as a town road in his memory. The town selectboard thought in 2008 that it had never been a public road. Indeed, at all relevant times, defendants had plowed and maintained the road as if it were their own.

In other words, defendants were ultimately wrong about the status of the road. But the record falls far short of establishing that defendants had no reason to believe in their claim of ownership or otherwise acted recklessly with regard to the truth or falsity of their belief. Defendants had reason to believe they owned the road every time they plowed it. And the town's independent position that the road was not public is objective evidence showing the reasonableness of defendants' belief.

The evidence therefore does not support the conclusion that defendants acted recklessly by asserting ownership of the road in 1985 and 2006. The public status of the road was not clearly established until the summary-judgment decision issued in August 2008 (and even then, the public status of the road was only binding as between plaintiff and defendants, since the town was not a party). It follows that the evidence does not support a finding of malice at the time of defendants' 1985 and 2006 statements.

Nor can the court find malice with respect to defendant's statements at the November 2008 selectboard meeting. Again, the town was not a party to the case, and had not been offered an opportunity to be heard on the question of whether or not the road was public. The town was not bound by the court's decision. It was therefore very reasonable for defendants to wonder what the town thought about the status of the road and how it would respond to the court decision.

Of course, the town took the position that the access road was not public, and that they had no intention of maintaining the road. It was only later that they agreed to take on that responsibility.

All of this begs the question why plaintiff did not seek clarification from the town as to the status of the access road *before* initiating this lawsuit. The impression left by the omission merely reinforces what has already become obvious from the rest of the record: the town did not consider the road to be public at any time before 2009. It was hardly reckless, therefore, for defendants to harbor and assert the opinion that they owned the road.

The court is not resolving a disputed question of intent here. The court is merely observing that the record, when viewed in the light most favorable to plaintiff, does not even come close to supporting a finding that defendants acted with malice in asserting a claim of title to the access road. Defendants are accordingly entitled to summary judgment in their favor on this claim.

It is not necessary for the court to go further, but there is an additional weakness to note in plaintiff's case. The essential elements of slander of title require proof that the false statement disparaged plaintiff's "title," meaning an ownership or possessory interest in land that is transferable. *Wharton*, 2003 VT 19, ¶ 14; Restatement (Second) of Torts § 624, cmt. c. An example would be a statement on the part of defendants that wrongfully denied the existence of a private right of way over the access road. Defendants' statements here did not disparage a deeded right, however, or even plaintiff's private right to access a public road. *Okemo Mtn., Inc. v. Town of Ludlow*, 171 Vt. 201, 208 (2000). Defendant's statements rather merely questioned whether or not the access road was public. Plaintiff has not provided any citation to support her contention that slander of title occurs when a person questions whether or not the general public has a right to use a particular road.

For these independent reasons, the court concludes that defendants are entitled to judgment as a matter of law on plaintiff's claim for slander of title.

The court now turns to plaintiff's second claim for relief: tortious interference with her right of public travel. The actual grounds for this claim are pretty vague—plaintiff has suggested variously that her right to relief is afforded by the principles of tortious interference with contract, *Field v. Costa*, 2008 VT 75, 184 Vt. 230, an equitable exception to the American Rule that permits awards of attorneys' fees in cases of obdurate or obstinate litigation, *In re Gadhue*, 149 Vt. 322, 327 (1987), or the doctrine of public nuisance, *Pilgrim Plywood Corp. v. Melendy*, 110 Vt. 12 (1938).

There is no tortious interference with contract here because there was no contract. Defendants did not intentionally and improperly induce anyone not to perform their contract with plaintiffs. *Field*, 2008 VT 75, ¶ 25. Nor was there an unreasonable interference with a public right within the meaning of *Melendy* or section 821B of the Restatement (Second) of Torts because the road was not actually obstructed (*Melendy* involved a dam flooding a public highway), and in any event the right of the public to use the access road was not clearly established until August 2008 at the very earliest.

6

That leaves the equitable exception to the American Rule described by *Gadhue*. It is the general rule, of course, that parties must bear their own attorneys' fees in the absence of a statutory or contractual provision to the contrary. *DJ Painting, Inc. v. Baraw Enters., Inc.*, 172 Vt. 239, 246 (2001). Courts may nevertheless consider an award of fees "as the needs of justice dictate . . . in exceptional cases and for dominating reasons of justice." *Id.* An award under the equitable exception may be considered in cases where "the litigant's conduct can be characterized as unreasonably obdurate or obstinate, and where it should have been unnecessary for the successful party to have brought the action." *Gadhue*, 149 Vt. at 329 (internal quotations omitted). The equitable exception applies in situations where "a litigant was compelled to appear twice before [a tribunal] in order to obtain relief which should have been forthcoming after the first appearance." *Monahan v. GMAC Mortgage Corp.*, 2005 VT 110, ¶ 77, 179 Vt. 167 (internal quotation omitted).

The present litigation is not a second or superfluous trip through the state court system. As explained above, the public nature of the access road was at best unclear between 1986 and 2008, and was not clarified until the summary-judgment ruling in August 2008 and the town's subsequent adoption of the road as public. It was not obstinate or unreasonable for defendants to take the view that the road was private, given all appearances on the ground. Plaintiff's suggestion that she is entitled to an award of fees because defendants did not roll over upon the filing of the complaint is simply not supported by the record. This is not a case where an award of fees under *Gadhue* is appropriate.

In short, the record does not contain any facts supporting plaintiff's claim for tortious interference with public travel even when the facts are viewed in the light most favorable to plaintiff. Summary judgment on the claim is accordingly granted to defendants.

Count IV of the amended complaint alleges that defendants recorded a fraudulent and deceitful deed in 1985, and that defendants acted with the intent to avoid plaintiff's rights to use the access road as a public highway. 27 V.S.A. § 542. Since there is not even a suggestion in the record that the recording of the 1985 deed was fraudulent, defendants are entitled to summary judgment on this claim.

Counts V and VI were alternate claims to be advanced in the event that the access road was determined not to be a public highway. Those claims are moot in light of the partial final judgment entered in plaintiff's favor on the public status of the road.

As such, it appears that there are no pending causes of action left. Summary judgment has been granted to defendants on Counts II—VI of the complaint. The court trial for next week is cancelled, and the remaining motions in the case—all related to discovery or other evidentiary concerns—are denied as moot.

7

## ORDER

(1)     Defendants' Motion for Partial Summary Judgment (MPR #16), filed November 2, 2009, is *granted*.

(2)     Plaintiff's Motion for Partial Summary Judgment on Count III (MPR #19), filed December 3, 2009, is *denied*.

(3)     Defendants' Cross-Motion for Summary Judgment on Count III, filed Dec. 24, 2009, is *granted*.

(4)     All other pending motions are *denied as moot*.

(5)     The court trial scheduled for next week is *cancelled*.

(6)     Defendants' attorney shall prepare a form of final judgment and submit it to the court within five days.

Dated at Woodstock, Vermont this _____ day of April, 2010.


_____
Hon. Harold E. Eaton, Jr.
Presiding Judge